**INTERSTATE NATURAL GAS CO., Inc.,
v. LOUISIANA PUBLIC SERVICE
COMMISSION et al.**

**Civ. No. 38.**

District Court, E. D. Louisiana, Baton
Rouge Division.

Aug. 14, 1940.

Shotwell & Brown, of Monroe, La., for plaintiff.

Leslie P. Gardiner, Atty. Gen. of Louisiana, and Ellis C. Irwin, Sp. Asst. Atty. Gen. (A. G. Ball, Jr., of New Orleans, La., of counsel), for defendants.

Before FOSTER and McCORD, Circuit Judges, DAWKINS, District Judge.

DAWKINS, District Judge.

The nature of this case is stated in the opinion handed down on the application for preliminary injunction, which was denied. D.C., 33 F.Supp. 50. We are now to consider the merits. The case has been submitted upon the same record which was before us on the former hearing, without additional proof, and we have been favored with brief by counsel for the complainant only.

The matter to be decided at this time, is as to whether plaintiff is entitled to a declaratory judgment under Section 274d of the Judicial Code, 28 U.S.C.A. § 400, that it is not subject to the jurisdiction of the Public Service Commission of the State.

The facts, as developed at the hearing, were stated specially by us in our former opinion, but since they are more succinctly set forth, and we find correctly, in the brief of complainant, the latter are adopted as the specific findings in this case, to-wit:

"1. Plaintiff is a Delaware corporation, without charter power to act as a common carrier or public utility corporation, and is authorized to do business in Louisiana only as a private corporation.

"The Company was organized primarily to supply fuel to a refinery at Baton Rouge.

"2. It owns and operates a 22″ pipe line extending from Fowler, Louisiana, in the Monroe gas field, to the city of Baton Rouge, Louisiana, a distance of 171.61 miles, of which 43.92 miles extend across the southwest corner of the state of Mississippi.

"3. It produces and purchases natural gas in the Monroe gas field and, under specific contracts, sells:

"(a) Large quantities of natural gas in the Monroe field to pipe line companies

"(b) Small quantities to industries and distributors along the 91.17 miles of line prior to crossing the Mississippi River

"(c) Small quantities to distributors along the 43.92 miles of line in the state of Mississippi

"(d) Small quantities to distributors along its line in the state of Louisiana after it enters the state north of Baton Rouge

"(e) To the distributing company at Baton Rouge and to several industries in the vicinity of Baton Rouge

"It transports gas from the Monroe field to a point of connection, near Baton Rouge, with a pipe line of United Gas Pipe Line Company.

"4. It was stipulated by said parties as follows:

" 'All gas sold and marketed by Interstate Natural Gas Company, Incorporated, is sold and marketed:

" '(a) At wholesale to other companies or corporations who, in turn, sell and distribute the same to consumers, deliveries of which gas are made by Interstate Natural Gas Company, Incorporated, at taps on its main line to such purchasers; or

" '(b) To industrial consumers, deliveries, of which gas is made by Interstate at taps on its main line to such purchasers; or

" '(c) To corporations operating interstate pipe lines extending from the State of Louisiana into other states, deliveries of which gas are made by Interstate to such purchasers at the compressor stations of said purchasers, as hereinafter more particularly set out.'

"5. From the affidavits of A. H. Salisbury and Glenn Anderson, it appears that, during the twelve month period from July 1, 1938, to June 30, 1939, the gas sold by plaintiff was as follows:

| | |
|---|---|
| Field sales to pipe line companies which transport it out of Louisiana | 24,806,424 MCF |
| Sales from the main pipe line of Interstate between Fowler, Ouachita Parish, Louisiana, and the Mississippi River | 71,830 MCF |
| Sales from the main line of Interstate in the State of Mississippi | 222,204 MCF |
| Sales from the main pipe line of Interstate after it re-enters the state of Louisiana to its southern terminus near Baton Rouge | 21,704,812 MCF |
| Sales from the main pipe line of United Gas Pipe Line Company (formerly Southern Gas & Fuel Company), south of Baton Rouge, Louisiana | 2,732,631 MCF |

"In addition, plaintiff transported from the Monroe field to a point near Baton Rouge for United Gas Pipe Line Company under special contract for delivery into the pipe line of said company which extends to the city of New Orleans, 22,274,127 MCF in the period from July 1, 1937, to June 30, 1938. The corresponding figure for the subsequent twelve-month period is not in the record.

"6. Plaintiff does not sell gas generally to the public and has never held itself out as a common carrier or public utility. It sells all of its gas under private contracts (approximately 30 in number) made pursuant to separate negotiations with each customer. It has no affiliation with any distributor to which it sells gas.

"7. Plaintiff has never filed with the Secretary of State of Louisiana a resolution of its board of directors agreeing that it shall be and act as a common carrier under the provisions of Section 7 of Act 39 of the Louisiana General Assembly of 1906. It has not at any time exercised, nor does it claim the authority to exercise, the power of eminent domain. It has never sought or been granted any franchise or privilege to act either as a common carrier or public utility. It has never filed or been requested to file by the Secretary of State of Louisiana or any other governmental authority any reports required of a common carrier or public utility. None of the pipe lines of plaintiff occupy longitudinally any public highway or property."

## Conclusions of Law

In view of these facts, we are constrained to hold that the complainant is not a public utility or a common carrier pipe line, and that 99.83% of its gas is sold and moves in interstate commerce. As stated in our former opinion, at that time, we were confronted with the duty of determining, under the showing made, whether or not we should exercise the largely discretionary power of granting an injunction preliminarily, to restrain the Commission from proceeding further in the matters which it had under investigation, before hearing the cause on its merits, and particularly the prayer for a declaratory judgment. Our views were stated in somewhat general terms as follows [33 F.Supp. 54]: "The principal question presented therefore, is, Should this court stop the investigation as to rates until it can pass upon the demand for a declaratory judgment? It would seem that the petition, on its face, presents a case of an actual controversy, that is, as to whether plaintiff is subject to the jurisdiction of the Commission, but so far it has not entered an affirmative order to do or not do anything except the payment for the investigation as to rates, practices, etc., and for which it is admitted payment will be required according to the state statute.

Of course, if the Commission is entitled to proceed with the investigation, regardless of what the outcome may be, then it would seem that it may, within the limits of the Act, whose constitutionality, as stated, has not been assailed, require payment therefor."

Of. course, the defendants had the right, through proper procedure, to develop other facts if they existed, to dispute or contradict those offered by complainant, but this has not been done, and since the evidence is all one way, that is, that the complainant is not a public utility or common carrier pipe line but all of its business, except .17%, is in interstate commerce, the State Public Service Commission has no power or jurisdiction over it, and the provisions of the State laws on the subject relied on by the defendants have no application.

There should be judgment for complainant, therefore, declaring that it is not subject to the jurisdiction of the Public Service Commission of the State, and permanently enjoining it, its officers, agents and employees from further prosecuting the proceedings complained of.