STATE OF WISCONSIN et al. v. FEDERAL POWER COMMISSION (Phillips Petroleum Co. et al., Intervenor *).

CITY OF DETROIT, MICH. v. FEDERAL POWER COMMISSION (Phillips Petroleum Co. et al., Intervenors).

CITY OF KANSAS CITY, MO. v. FEDERAL POWER COMMISSION (Phillips Petroleum Co. et al., Intervenors).

CITY OF MILWAUKEE, WIS. v. FEDERAL POWER COMMISSION (Phillips Petroleum Co. et al., Intervenors).

WAYNE COUNTY, MICH. v. FEDERAL POWER COMMISSION (Phillips Petroleum Co. et al., Intervenors).
Nos. 11247, 11241, 11242, 11245 and 11252.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1953.

Decided May 22, 1953.

* Also intervenors in Nos. 11241, 11242, 11245 and 11252.

Clark, Circuit Judge, dissented.

Messrs. Stewart G. Honeck and William E. Torkelson, Madison, Wis., and for petitioners in No. 11247. Mr. Charles S. Rhyne, Washington, D. C., also entered an appearance for petitioners in Nos. 11247, 11245, 11242, 11241 and 11252.

Mr. Harry G. Slater, Washington, D. C., submitted on the brief for petitioner in No. 11245.

Mr. Jerome M. Joffee, Kansas City, Mo., for petitioner in No. 11242. Mr. James H. Lee, Detroit, Mich., entered an appearance for petitioner in No. 11242.

Mr. James H. Lee, Detroit, Mich., for petitioner in No. 11241.

Mr. Bradford Ross, General Counsel, Federal Power Commission, Washington, D. C., with whom Messrs. Bernard A. Foster, Jr., Assistant General Counsel, Federal Power Commission, and Pascal B. Frazier, Attorney, Federal Power Commission, Washington, D. C., were on the brief, for respondent.

Mr. Hugh B. Cox, Washington, D. C., with whom Messrs. Ernest W. Jennes and Burke Marshall, Washington, D. C., Rayburn L. Foster, Harry D. Turner, Bartlesville, Okl., and Warren M. Sparks, Tulsa, Okl., were on the brief, for intervenor Phillips Petroleum Co.

Mr. J. Paull Marshall, Washington, D. C., submitted on the brief for intervenor State of Texas and the Railroad Commission of Texas. Mr. Peter N. Chumbris, Washington, D. C., submitted on the brief for intervenor State of New Mexico and the Oil Conservation Commission of the State of New Mexico.

Mr. J. Paull Marshall, Washington, D. C., submitted on the brief for intervenor Corporation Commission of Oklahoma.

Before EDGERTON, CLARK, and PRETTYMAN, Circuit Judges.

EDGERTON, Circuit Judge.

We have for review under § 19(b) of the Natural Gas Act, 52 Stat. 821, 15 U.S.C.A. § 717 et seq., the question whether Phillips Petroleum Company (Phillips) is a "natural-gas company" within the meaning of the Act, so that the Federal Power Commission has authority under the Act to fix the rates at which Phillips sells gas for interstate transportation and resale. The Commis-

sion's staff assured the Commission it had authority, but the Commission reached the opposite conclusion. Commissioner Buchanan dissented.

Phillips is a very large operator in the petroleum industry and a very large producer, gatherer, and processor of natural gas from wells in Texas, Oklahoma, and New Mexico. Phillips owns and operates nine gathering systems and ten processing plants. Through progressively larger pipelines it gathers gas that it produces from its own wells, and other gas that it buys, at common points in or near its plants. At these plants it processes the gas to make it salable or to recover extractable products or both. Phillips then moves the gas here involved through short lines to points where Phillips sells it to Michigan-Wisconsin Pipe Line Company, Panhandle Eastern Pipe Line Company, Independent Natural Gas Company, El Paso Natural Gas Company, or Cities Service Gas Company,[1] for intertsate transportation and resale. Thus Phillips sells the gas after the time and beyond the place at which production and gathering are complete and after processing has intervened. For example, gas processed in one Phillips plant then flows about 240 feet through a Phillips pipeline to sales meters owned and operated by Phillips, where it is sold and delivered to Panhandle Eastern Pipe Line Company. Gas that Phillips produces, gathers, processes, and sells and delivers to the interstate pipeline companies in Texas or New Mexico is resold, after continuous movement, for ultimate public consumption in many other states including Arizona, California, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, Ohio, and Wisconsin, and also in the province of Ontario.

The Supreme Court decided in 1924 that the Constitution forbids states to regulate rates at which natural gas is sold, at points remote from the wells, "in wholesale quantities, not to consumers, but to distributing companies for resale to consumers in numerous cities and communities in different States." The sales in that case, like those in this case, were by a producer and gatherer. The Court said: "the sale and delivery here is an inseparable part of a transaction in interstate commerce—not local, but essentially national, in character * * *. The contention that, in the public interest, the business is one requiring regulation, need not be challenged. But Congress thus far has not seen fit to regulate it, and its silence, where it has the sole power to speak, is equivalent to a declaration that that particular commerce shall be free from regulation." Missouri ex rel. Barrett v. Kansas Natural Gas Co., 1924, 265 U.S. 298, 309, 308,[2] 44 S.Ct. 544, 546, 68 L.Ed. 1027.

Some years later Congress decided that that particular commerce should no longer be free from regulation and therefore passed the Natural Gas Act of 1938. The Act begins with a declaration in § 1(a) "that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest."[3] The House Committee on Interstate and Foreign Commerce said in its report on the bill: "sales for resale, or so-called wholesale sales, in interstate commerce (for example, sales by producing companies to distributing companies) * * * have been considered to be not local in character and, even in the absence of Congressional action, not subject to State regulation. (See Missouri [ex rel. Barrett] v. Kansas Gas Co. (1924), 265 U. S 298, [44 S.Ct. 544, 68 L.Ed. 1027], and

1. Slight variations with respect to sales to Cities Service Gas Company are not material.

2. In that case most of the gas was sold after it crossed state lines, whereas in this case it is sold before it crosses a state line, but as appears later this difference is immaterial. The electricity involved in Public Utilities Commission v. Attleboro Steam & Electric Co., 1927, 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549, was sold at a state line. Both those cases, which denied state power to regulate, were decided before the Natural Gas Act was passed.

3. 52 Stat. 821, 15 U.S.C.A. § 717(a).

Public Utilities Commission v. Attleboro Steam & Electric Co. (1927), 273 U.S. 83 [47 S.Ct. 294, 71 L.Ed. 549].) *The basic purpose of the present legislation is to occupy this field* in which the Supreme Court had held that the States may not act." [4]

In accordance with this basic purpose the Natural Gas Act provides in § 1(b) that it "shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas." [5] Section 2(6) provides that " 'Natural-gas company' means a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale." [6] Section 5(a) authorizes the Commission to regulate interstate sales rates of natural-gas companies. [7]

Accordingly the Supreme Court has repeatedly upheld the Commission's authority under the Natural Gas Act to regulate the rates at which a producer and gatherer of of natural gas sells it, after producing and gathering it, to pipeline companies for resale in other states. One such case is Colorado Interstate Gas Co. v. Federal Power Commission, 1945, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206. In that case the company called "Canadian" was a producer and gatherer. It produced from its own properties all the gas it sold. The Commission adopted a rate base etc. that included Canadian's production and gathering properties as well as its interstate transmission system. Canadian contended "that contrary to the mandate of § 1(b) the Commission has undertaken to regulate the production and

gathering of natural gas." 324 U.S. at page 597, 65 S.Ct. at page 837. It pointed out that Senator Wheeler, who sponsored the legislation in the Senate, said during the debate: "It does not attempt to regulate the producers of natural gas or the distributors of natural gas; only those who sell it wholesale in interstate commerce." 324 U.S. at page 600, 65 S.Ct. at page 838. But the Supreme Court said: "A natural-gas company as defined in § 2(6) of the Act, [15 U.S.C.A. § 717a(6) is 'a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale.' Canadian is such a company. It is plain therefore that the Commission has authority to fix its interstate wholesale rates. * * * That does not mean that the part of § 1(b) which provides that the Act shall not apply 'to the production or gathering of natural gas' is given no meaning. Certainly that provision precludes the Commission from any control over the activity of producing or gathering natural gas. For example, it makes plain that the Commission has no control over the drilling and spacing of wells and the like." 324 U.S. at pages 600–601, 602–603, 65 S.Ct. at page 838.

In Interstate Natural Gas Co. v. Federal Power Commission, 1947, 331 U.S. 682, 67 S.Ct. 1482, 91 L.Ed. 1742, the Court again upheld the Commission's regulation of the rates at which a producer and gatherer of natural gas sold it to pipeline companies for resale in other states. The Court said: "In a series of decisions announced prior to the passage of the Act, this Court had held that although Congress had not acted, the regulation of wholesale rates of gas and electrical energy moving in interstate commerce is beyond the constitutional powers of the States. * * * As was stated in the House Committee report, the 'basic purpose' of Congress in passing the Natural Gas Act was 'to occupy this field in which the Supreme Court has held that the States may not act.' In denying the Federal Pow-

---

4. Emphasis supplied. H.Rep.No. 709, 75th Cong., 1st Sess., April 28, 1937; quoted in Illinois Natural Gas Co. v. Central Illinois Public Service Commission, 314 U.S. 498, 506–507, note 1, 62 S.Ct. 384, 86 L.Ed. 371.

5. 52 Stat. 821, 15 U.S.C.A. § 717(b).

6. 52 Stat. 821, 15 U.S.C.A. § 717a(6).

7. 52 Stat. 822, 15 U.S.C.A. § 717d.

er Commission jurisdiction to regulate the production or gathering of natural gas, it was not the purpose of Congress to free companies such as petitioner from effective public control. The purpose of that restriction was, rather, to preserve in the States powers of regulation in areas in which the States are constitutionally competent to act. Thus the House Committee Report states: 'The bill takes no authority from State commissions, and is so drawn as to complement and in no manner usurp State regulatory authority. * *. * ' Clearly, among the powers thus reserved to the States is the power to regulate the physical production and gathering of natural gas in the interests of conservation or of any other consideration of legitimate local concern. It was the intention of Congress to give the States full freedom in these matters." 331 U.S. at pages 689–690, 67 S.Ct. at page 1486.

In the Interstate Natural Gas case the Supreme Court found the Commission's rate regulation not within the intent of the "production or gathering" exemption because not inconsistent with exercise by the state of its regulatory functions. This made it unnecessary for the Court to decide "whether the gathering process continued to the points of sale" although it observed that "By the time the sales are consummated, nothing further in the gathering process remains to be done." 331 U. S. at page 692, 67 S.Ct. at page 1488. But in the decision that the Supreme Court affirmed, the Court of Appeals for the Fifth Circuit, following the Colorado Interstate case, supra (referred to as the Canadian River Gas case), expressly rejected Interstate's attempt "to read the exception with respect to production or gathering as an exception with respect to sales." Interstate Natural Gas Co. v. Federal Power Commission, 156 F.2d 949, 951. And as the Fifth Circuit said, "In Peoples Natural Gas Co. v. Federal Power Comm., 75 U.S.App.D.C. 235, 127 F.2d 153, the court found that a sale in Pennsylvania to an interstate pipeline company which immediately transported it to New York was a sale of natural gas in interstate commerce for resale, and, so finding, held that the provision that the act did not apply to production or gathering did not limit the commission's jurisdiction over such sales." 156 F.2d at page 951–952.[8]

▬ The Commission finds that the sales involved here are sales in interstate commerce of natural gas for resale. That finding is not disputed. It follows that no state can regulate these sales. It was plain long before the Natural Gas Act was passed that "state regulatory power could not reach high-pressure trunk lines and sales for resale. This was the 'gap' which Congress intended to close."[9] Federal Power Commission v. East Ohio Gas Co., 1950, 338 U. S. 464, 472–473, 70 S.Ct. 266, 271, 94 L.Ed. 268. As we have shown, the Supreme Court has determined that Congress closed it.[10] The Commission now holds in effect that Congress failed to close it.

8. The brief filed here for the Peoples Natural Gas Company raised the "production and gathering" contention. We rejected it without mentioning it.

9. Since Phillips' sales are made after the gas has been gathered into trunk lines Cities Service Gas Co. v. Peerless Oil & Gas Co., 1950, 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190, is irrelevant. That case upholds a state's power, in aid of conservation, to fix minimum prices for natural gas sold at the wellhead for interstate movement. Such sales are obviously made during the "production and gathering" which Congress reserved to state control, and it "is now well settled that a state may regulate matters of local concern over which federal authority has not been exercised, even though the regulation has some impact on interstate commerce." 340 U.S. at page 186, 71 S. Ct. at page 219. Moreover the Supreme Court has said: "prior constitutional decisions, not what we have since decided or would decide today, form the measure of the gap which Congress intended to close by this Act." Federal Power Commission v. East Ohio Gas Co., 1950, 338 U.S. 464, 472, 70 S.Ct. 266, 270, 94 L.Ed. 268.

10. Again on April 7, 1953, the Court said: "Especially in the litigation arising under the Gas Act has this Court expressed the view that the limitations established on Commission jurisdiction therein were designed to coordinate precisely with those constitutionally imposed on the states." United States v. Public Utilities Commission of California, 345 U.S. 295, 311, 73 S.Ct. 706, 716.

The Commission finds that Phillips' transportation in interstate commerce and its sales in interstate commerce together with its processing operations, "all constitute a part of its gathering business, *or* they are incidents of *or* activities related to such business, *so that* such movement, processing, and sales come within the exemption of production and gathering in Section 1(b) of the Act." [11] The premise does not support the conclusion. The Supreme Court said in the Interstate Natural Gas case: "*where sales,* though technically consummated in interstate commerce, *are made during the course* of production and gathering *and* are so closely connected with the local incidents of that process as to render rate regulation by the Federal Power Commission inconsistent or a substantial interference with the exercise by the State of its regulatory functions, the jurisdiction of the Federal Power Commission does not attach." [12] By replacing the Supreme Court's "and" with "or" the Commission reverses the sense.

█ The Commission's finding expresses a belief that even if Phillips' interstate sales of gathered and processed gas are not "part of its gathering business" or even "incidents of * * * such business", they are nevertheless "within the exemption of production and gathering in Section 1(b) of the Act" if they are closely "related to such business". If this were law neither the Interstate Natural Gas case nor the

Colorado Interstate Gas case could have been decided as it was. For the sales of a producer and gatherer are necessarily and closely related to production and gathering. It does not follow that his bulk interstate sales are exempt from regulation under the Natural Gas Act. The cases we have cited, and §1(b) of the Act itself, show that such sales are not exempt. Section 1(b) says the act shall apply "to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale * * * and to natural-gas companies engaged in such transportation or sale * * *." It proceeds to exempt both "local distribution" and "production or gathering", but it exempts nothing between "production or gathering" and "local distribution." The exemption of production or gathering does not exempt sales made after production and gathering have been completed.[13]

█ Phillips urges that the Commission's findings are supported by substantial evidence and should therefore be sustained. But the validity or invalidity of the Commission's conclusion that Phillips is not a "natural-gas company" does not turn upon the evaluation of testimony or upon any facts peculiar to this case. It turns upon the generic question whether the exemption of "production or gathering" in §1(b) of the Natural Gas Act covers interstate sales of gas by the corporation that produced and gathered it. We think the Act

---

11. Emphasis supplied. The quotation is from the Commission's finding (2), one of the three numbered findings at the end of its opinion.

In the course of its opinion the Commission says: "Though technically consummated in interstate commerce, these sales are made 'during the course of production and gathering.' And we expressly find that they are so closely connected with the local incidents of that process as to render rate regulation by this Commission inconsistent or a substantial interference with the exercise by the affected States of their regulatory functions." As appears later, we think the description of these sales in the first of these sentences unsupportable and that this makes the finding in the second sentence immaterial. We do not imply that we think the finding supportable.

On the contrary, as the Supreme Court has held, federal protection of consumers against exorbitant rates is not inconsistent with the exercise by the producing state of its regulatory functions. Interstate Natural Gas case, supra.

12. Emphasis supplied. The Court added: "But such conflict must be clearly shown. Exceptions to the primary grant of jurisdiction in the section are to be strictly construed." 331 U.S. at pages 690–691, 67 S.Ct. at page 1487.

13. Federal Power Commission v. Panhandle Eastern Pipe Line Co., 337 U. S. 498, 69 S.Ct. 1251, 1255, 93 L.Ed. 1499, on which the Commission relies, does not touch the point. It holds that transfers of leases intended for use in production are within the exemption.

and the decisions of the Supreme Court permit only one answer. We think the Commission has applied an erroneous rule of law. Phillips' sales to the pipeline companies are not within either the statutory phrase "the production or gathering of natural gas" or the Supreme Court's paraphrase "made during the course of production and gathering". Therefore Phillips is a "natural-gas company" within the meaning of the Natural Gas Act and the Commission should fix the rates at which these sales are made.[14]

Reversed.

CLARK, Circuit Judge (dissenting).

I am able to agree neither with the reasoning of the majority nor with its conclusions. In my opinion, the Federal Power Commission had no jurisdiction over Phillips and no power to fix the rates at which Phillips sells gas to pipe line or transportation companies, and the order of the Commission therefore should be sustained. The Commission has claimed authority in so many cases in which it did not have a shadow of a claim, that it ought to be encouraged in its latest effort to stick strictly within its jurisdiction.

The answer to the question whether Phillips is a "natural-gas company" within the meaning of the Natural Gas Act and as such subject to regulation thereunder depends, in so far as this controversy is concerned, solely and exclusively upon the answer to the preliminary question whether Phillips' activities are encompassed within the concepts of "production" or "gathering." If they are, then Phillips cannot be regulated by the Commission, for section 1 (b) plainly and unequivocally states that " * * * this Act * * * shall not apply * * * to the production or gathering of natural gas." Manifestly, then, the problem as to whether Phillips' sales are a part of the production or gathering process goes to the very crux of the issue before us and determines the outcome of this litigation. Consequently I find it impos-

sible to go along with my brethren of the majority, who, at the very outset of their opinion, simply assume that "Phillips sells the gas after the time and beyond the place at which production and gathering are complete * * *" and then go on to build on that assumption of the answer elaborate and imposing arguments leading quite naturally to the final conclusion that Phillips' sales are indeed without the gathering exemption of § 1(b). It is perhaps noteworthy that the Court's assumption flies directly in the face of a diametrically contrary administrative determination, arrived at by the Commission after it had heard testimony and read exhibits filling close to 10,000 pages of the record.

I do not disagree with the view that the extent and scope of the production or gathering exemption must be determined by reference to the statute and to familiar principles of statutory construction. In other words, the meaning of the word "gathering" is a question of law, not of fact, and therefore not dependent upon or controlled by the factual findings of the Commission, irrespective of the quantity and quality of evidence cited in support thereof. But once the scope of the exemption is established as a matter of law—and I believe the only reasonable construction of the statute and of the decisions is that sales may be included in the gathering exemption—then the Commission has the power to find and determine whether the particular operations of a particular company fit within or without the niche carved out for the exemption. Such findings should not be overturned if supported by substantial evidence;[1] they certainly may not simply be disregarded.

The natural gas business in this country consists of three main operations, separate and distinct in character and economic purpose, and usually performed by separate and distinct business units: (1) production and gathering of natural gas, carried on by independent producers and gatherers, such as Phillips; (2) transportation of gas, performed by pipe line companies; and (3)

---

14. The Commission expressly recognizes that its decision to the contrary is subject to review.

1. Cf. Cardillo v. Liberty Mutual, 1947, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028.

distribution of gas to the ultimate consumers, carried on by local distributing companies.[2] But this separation of functions is not and cannot be absolute. For example, some transportation is involved in both the production and the distribution phases. Similarly, all three phases culminate in sales, for the sale is the expected and necessary economic reward for the service performed. It is a trite but true observation that, as Judge Waller said in his dissent in the Interstate case: " * * * there can be no sustained production unless the gas can be collected and carried to market." Interstate Natural Gas Co. v. F.P.C., 5 Cir., 1949, 156 F.2d 949, 953. Nothing could be more absurd than to say that production and gathering are exempt but that the final sale by the producer and gatherer is subject to the Act.[3] That line of reasoning reduces the exemption to a hollow shell without content or meaning. In my view, the sale is as much part and parcel of the service performed as the labor or the tools which create that service, or the leases by which gas reserves may be transferred from one company to another.[4] Only the transportation phase of the natural gas business is covered by section 1(b) and I read that to mean that the jurdisdiction of the Commission extends only (1) to sales made during the transportation phase proper and (2) to sales by companies engaged in the business of transporting natural gas. On the other hand, sales made during or at the culmination of gathering and those which are a part of distribution are exempt from regulation by the negative language of § 1(b). That interpretation of the meaning of the statute is strengthened by the additional safeguard that the Act should not apply "to any other transportation or sale of natural gas" except to what in effect is the transportation phase of the natural gas business.

The majority attempts to justify its conclusions with the argument that the legislative history shows that this statute was enacted in order to close the "gap" between Federal and State regulation and that the Commission order frustrates that purpose. But it is by no means clear that there was a gap where the majority thinks it was. The cases cited by the House Committee in H. Rep. 709, 75th Cong., 1st Sess., in support of the statement that the statute was designed to occupy a field in which the Supreme Court had held that the states cannot act (the famous gap), these cases dealt with sales after transportation in interstate commerce and were related to transportation and distribution, not to transportation and gathering.[5] Even more, the existence of a gap presupposes that the states have no power to regulate activities of the type in which Phillips was engaged. But not only is that field not preempted by the commerce clause,[6] for, as the Supreme Court said 340 U.S. at page 186, 71 S.Ct. at page 219, in the Cities Service case:[7] "It is now well settled that a state may regulate matters of local concern over which federal authority has not been exercised, even though the regulation has some impact on interstate commerce," and 340 U.S. at page 187, 71 S.Ct. at page 220, "Nor should we lightly translate the quiescence of federal power into an affirmation that the national interest lies in complete freedom from regulation," but by § 1(b) the Congress specifically reaffirmed

2. Traditionally, the first and third stages are local or state-wide in character, and only the second stage is an interstate business.

3. The Supreme Court in Interstate, note 8, infra, very pointedly refused to sustain a Fifth Circuit ruling which held just that; and it said in F.P.C. v. Panhandle Eastern, 1949, 337 U.S. 498, 506, 69 S. Ct. 1251, 93 L.Ed. 1499, that Colorado Interstate Gas Co. v. F.P.C., 1945, 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206, was "not a precedent for regulation of any part of production or marketing." **Marketing** of course includes selling.

4. F.P.C. v. Panhandle Eastern, supra, note 3.

5. See Missouri ex rel. Barrett v. Kansas Gas Co., 1924, 265 U.S. 298, 44 S.Ct. 544; P.U.C. of Rhode Island v. Attleboro Steam, 1927, 273 U.S. 83, 47 S.Ct. 294.

6. Cooley v. Board of Wardens, 1851, 12 How. 299, 13 L.Ed. 996.

7. Cities Service Gas Co. v. Peerless Oil & Gas Co., 1950, 340 U.S. 179, 186, 71 S. Ct. 215.

the power of the states to deal with this problem if the existence of such power had previously been in doubt. Panhandle v. Public Service Comm. of Indiana, 1947, 332 U.S. 507, 517, 519, 68 S.Ct. 190.

Since the majority opinion leans so heavily upon the Interstate decision,[8] it may perhaps be well to compare that case with the instant one in order to determine whether Interstate really is controlling here. There, the Commission found and determined, and pointed out to the courts, that the sales were made after the gathering process had been completed and after there had been some transportation in a pipe line transmission system.[9] Here, the Commission made a contrary finding. There, the State of Louisiana never opposed Federal jurisdiction;[10] here, the states involved very vigorously objected to Commission jurisdiction because, they asserted, such regulation would interfere with state regulation or state conservation policies.[11] That conflict clearly brings into play the exception contemplated in the Interstate opinion.[12] And finally, there, the Supreme Court based its decision not upon the reasoning supporting the opinion of the Court of Appeals for the Fifth Circuit—which is the reasoning again relied on here—that the sales were outside of the

gathering process, but it expressly declined to support its ruling on that ground when it said that it found it unnecessary to resolve the issues of whether the sales were made from the transmission or the gathering lines. Quite the contrary. The Court flatly stated: "By the time the sales are consummated, nothing further in the gathering process remains to be done." 331 U.S. at page 692, 67 S.Ct. at page 1488. That statement can mean only that the Court recognized that Interstate's sales were a part of the gathering process, which is precisely what the majority of this Court flatly rejects in the instant case, even though the facts here even more strongly than there suggest sales from gathering lines.

As I see it, Phillips' sales were a part of gathering and exempt from regulation as such. I need not, therefore, discuss at length the problem whether they might be outside the regulatory coverage of the statute if they were not a part of the gathering process but merely related or incident to the production or gathering business. Suffice it to say that I cannot agree with the fine-spun reasoning of the majority which purports to find an "and" where the Commission found an "or". While the Interstate case, as the majority correctly points out, refers to sales made during the course

8. Interstate Natural Gas Co. v. F.P.C., 1947, 331 U.S. 682, 67 S.Ct. 1482.

9. Brief filed by the Commission in the Supreme Court, at pp. 29–33.

10. As a matter of fact, the Interstate Gas Co. had successfully prevented state regulation with the assertion that its sales were interstate in character. Interstate Natural Gas Co. v. Louisiana P.U.C., D.C.E.D.La.1940, 33 F.Supp. 50; Interstate Natural Gas Co. v. Louisiana P.U. C., D.C.E.D.La.1940, 34 F.Supp. 980.

11. The Supreme Court has made it clear that the Natural Gas Act was not to encroach upon the jurisdiction of the states and their legitimate conservation policies. F.P.C. v. Panhandle Eastern, 1949, 337 U.S. 498, 509–513, 69 S.Ct. 1251.

12. The Supreme Court said, 331 U.S. at page 691, 67 S.Ct. at page 1487: "There is nothing in the record to indicate that the regulation in question is in any way inconsistent with the exercise by Louisiana of the powers over production and gathering of natural gas reserved to it

by Congress in § 1(b) of the Act. * * * The record is devoid of any suggestion that Louisiana has ever opposed the jurisdiction of the Federal Power Commission in this case or has ever urged that federal regulation of the sales in question would interfere with the exercise by the State of its regulatory functions. We do not suggest that the jurisdiction of the Commission in any case is to be determined by the resistance or lack of resistance on the part of the State to federal regulation. But * * * we regard it a matter of some significance that * * * there is no evidence of any conflict * * * in the performing of those functions by the State with the exercise of the jurisdiction of the Federal Power Commission * * *." (Emphasis supplied.) A glance at the briefs submitted by the intervenor States will reveal the obvious fact that, at least as to that point, the cases bear no resemblance.

of gathering *and* closely connected with the local incidents of that process, the Panhandle decision, a later case, at least intimated that the "or" interpretation is not so far-fetched.[13] Also, any interpretation other than that suggested by the Panhandle case is unreasonable and illogical, for the Act can hardly be read to require that sales, to be exempt, be not only made during gathering but be also related thereto. Only the first half of the clause is listed in § 1(b). If that clause is to be extended by interpretation, it might more logically be extended by reading "or related to gathering" into it than by adding a brand-new requirement by an "and" clause which cannot be found anywhere in the Act.

But that issue need not be decided. To me, it seems inescapable under the statute, under the decisions, and in the name of plain economic common sense, that sales by a gatherer are a part of gathering so long as they are made before the gas enters the transmission lines proper. It is the function of the Commission to determine whether, in fact, the gas is sold before or after that point. A finding was made by the Commission in this case that the gas was sold while it was still in the gathering lines and that finding seems unassailable either in fact or under the law as I interpret it.

The petition for review should be denied.

---

13. The Court said at page 506 of 337 U.S., at page 1257 of 69 S.Ct., that various sections referred to by the Commission " * * * do not even by implication suggest to us an extension of the regulatory provisions of the Act to cover *incidents connected with* the production or gathering of gas," and it reiterated 337 U.S. on page 515, 69 S.Ct. on page 1261. "As we have held above that the transfer of undeveloped gas leases is an *activity related to* the production and gathering of natural gas and beyond the coverage of the Act, the authority of the Commission cannot reach the sales." (Emphasis supplied.)