PUBLIC UTILITIES COMMISSION OF RHODE IS-
LAND ET AL. *v.* ATTLEBORO STEAM & ELECTRIC
COMPANY.

CERTIORARI TO THE SUPREME COURT OF RHODE ISLAND.

No. 217.   Argued October 11, 12, 1926.—Decided January 3, 1927.

Where a company engaged in the generation and sale of electricity in
one State enters into a time contract with another company in an
adjacent State, whereby current, to be paid for at an agreed rate,
is delivered by the first to the second company at the state line
and thence transmitted by the second company and sold to its
customers in the second State, the transaction, and the transmission
of the current, are interstate commerce, and the rate is not subject
afterwards to regulation by the first State, though this be deemed
necessary for the protection of the first company and its local con-
sumers. *Pennsylvania Gas Co.* v. *Public Service Commission,* 252
U. S. 23, distinguished.   P. 86.

46 R. I. 496, affirmed.

CERTIORARI (269 U. S. 546) to a judgment of the Su-
preme Court of Rhode Island which, on appeal, disap-
proved an order of the Rhode Island Public Utilities Com-
mission, increasing the rate chargeable to the Attleboro
Company by the Narragansett Electric Lighting Com-
pany—the moving party before the commission, and one
of the petitioners here—for electricity furnished at the
Rhode Island and Massachusetts line.

*Messrs. R. W. Boyden* and *Arthur M. Allen,* with whom *Messrs. Charles P. Sisson* and *Frank D. Comerford* were on the brief, for the petitioners.

*Mr. Robert G. Dodge,* with whom *Messrs. Archibald C. Matteson* and *Harold S. Davis* were on the brief, for the respondent.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This case involves the constitutional validity of an order of the Public Utilities Commission of Rhode Island putting into effect a schedule of prices applying to the sale of electric current in interstate commerce.

The Narragansett Electric Lighting Company is a Rhode Island corporation engaged in manufacturing electric current at its generating plant in the city of Providence and selling such current generally for light, heat and power. The Attleboro Steam & Electric Company is a Massachusetts corporation engaged in supplying electric current for public and private use in the city of Attleboro and its vicinity in that State.

In 1917, these companies entered into a contract by which the Narragansett Company agreed to sell, and the Attleboro Company to buy, for a period of twenty years, all the electricity required by the Attleboro Company for its own use and for sale in the city of Attleboro and the adjacent territory, at a specified basic rate; the current to be delivered by the Narragansett Company at the State line between Rhode Island and Massachusetts and carried over connecting transmission lines to the station of the Attleboro Company in Massachusetts, where it was to be metered. The Narragansett Company filed with the Public Utilities Commission of Rhode Island a schedule setting out the rate and general terms of the contract and was authorized by the Commission to grant the

Attleboro Company the special rate therein shown; and the two companies then entered upon the performance of the contract. Current was thereafter supplied in accordance with its terms; and the generating plant of the Attleboro Company was dismantled.

In 1924 the Narragansett Company—having previously made an unsuccessful attempt to obtain an increase of the special rate to the Attleboro Company[1]—filed with the Rhode Island Commission a new schedule, purporting to cancel the original schedule and establish an increased rate for electric current supplied, in specified minimum quantities, to electric lighting companies for their own use or sale to their customers and delivered either in Rhode Island or at the State line. The Attleboro Company was in fact the only customer of the Narragansett Company to which this new schedule would apply.[2]

The Commission thereupon instituted an investigation as to the contract rate and the proposed rate. After a hearing at which both companies were represented, the Commission found that, owing principally to the increased cost of generating electricity, the Narragansett Company in rendering service to the Attleboro Company was suffering an operating loss, without any return on the investment devoted to such service, while the rates to

---

[1] In 1921 the Commission had authorized the Narragansett Company to put into effect a schedule increasing the special rate to the Attleboro Company; but its enforcement had been enjoined on the ground of the lack of an essential finding by the Commission. *Attleboro Steam & E. Co.* v. *Narragansett E. Light Co.* (D. C.), 295 Fed. 895.

[2] No other electric lighting company supplied by the Narragansett Company required, either then or prospectively, the quantity of current necessary to make the proposed rate applicable. The Commission stated that the Attleboro Company was the only customer of the Narragansett Company affected by the proposed rate; and the brief for the petitioners states that the Attleboro Company was the only customer then falling within the schedule class.

its other customers yielded a fair return; that the contract rate was unreasonable and a continuance of service to the Attleboro Company under it would be detrimental to the general public welfare and prevent the Narragansett Company from performing its full duty to its other customers;[3] and that the proposed rate was reasonable and would yield a fair return, and no more, for the service to the Attleboro Company. And the Commission thereupon made an order putting into effect the rate contained in the new schedule.

From this order the Attleboro Company prosecuted an appeal to the Supreme Court of Rhode Island which—considering only one of the various objections urged—held, on the authority of *Missouri* v. *Kansas Gas Co.,* 265 U. S. 298, that the order of the Commission imposed a direct burden on interstate commerce and was invalid because of conflict with the commerce clause of the Constitution; and entered a decree reversing the order and directing that the rate investigation be dismissed. 46 R. I. 496.

It is conceded, rightly, that the sale of electric current by the Narragansett Company to the Attleboro Company is a transaction in interstate commerce, notwithstanding the fact that the current is delivered at the State line. The transmission of electric current from one State to another, like that of gas, is interstate commerce, *Coal & Coke Co.* v. *Pub. Serv. Comm.,* 84 W. Va. 662, 669, and its essential character is not affected by a passing of custody and title at the state boundary, not arresting the continuous transmission to the intended destination. *Peoples' Gas Co.* v. *Pub. Serv. Comm'n,* 270 U. S. 550, 554.

---

[3] The evidence showed that in 1923 the Narragansett Company had 71,554 customers, and that about one thirty-fifth of the current which it produced went to the Attleboro Company.

The petitioners contend, however, that the Rhode Island Commission cannot effectively exercise its power to regulate the rates for electricity furnished by the Narragansett Company to local consumers, without also regulating the rates for the other service which it furnishes; that if the Narragansett Company continues to furnish electricity to Attleboro Company at a loss this will tend to increase the burden on the local consumers and impair the ability of the Narragansett Company to give them good service at reasonable prices; and that, therefore, the order of the Commission prescribing a reasonable rate for the interstate service to the Attleboro Company should be sustained as being essentially a local regulation, necessary to the protection of matters of local interest, and affecting interstate commerce only indirectly and incidentally. In support of this contention, they rely chiefly upon *Pennsylvania Gas Co.* v. *Pub. Serv. Com.,* 252 U. S. 23; and the controlling question presented is whether the present case comes within the rule of the *Pennsylvania Gas Co.* case or that of the *Kansas Gas Co.* case upon which the Attleboro Company relies.

In the *Pennsylvania Gas Co.* case, the Company transmitted natural gas by a main pipe line from the source of supply in Pennsylvania to a point of distribution in a city in New York, which it there subdivided and sold at retail to local consumers supplied from the main by pipes laid through the streets of the city. In holding that the New York Public Service Commission might regulate the rate charged to these consumers, the court said that while a State may not " directly " regulate or burden interstate commerce, it may in some instances, until the subject-matter is regulated by Congress, pass laws " indirectly " affecting such commerce, when needed to protect or regulate matters of local interest; that the thing which the New York Commission had undertaken to regulate, while part of an interstate transmission, was " local in its na-

ture," pertaining to the furnishing of gas to local con-
sumers, and the service rendered to them was "essentially
local," being similar to that of a local plant furnishing
gas to consumers in a city; and that such "local service"
was not of the character which required general and
uniform regulation of rates by congressional action, even
if the local rates might "affect" the interstate business
of the Company.

In the *Kansas Gas Co.* case, the Company, whose busi-
ness was principally interstate, transported natural gas
by continuous pipe lines from wells in Oklahoma and
Kansas into Missouri, and there sold and delivered it to
distributing companies, which then sold and delivered it
to local consumers. In holding that the rate which the
Company charged for the gas sold to the distributing com-
panies—those at which these companies sold to the local
consumers not being involved—was not subject to regu-
lation by the Public Utilities Commission of Missouri,
the court said that, while in the absence of congressional
action a State may generally enact laws of internal police,
although they have an indirect effect upon interstate
commerce, "the commerce clause of the Constitution, of
its own force, restrains the States from imposing direct
burdens upon interstate commerce," and a state enact-
ment imposing such a "*direct burden*" must fall, being
a direct restraint of that which in the absence of Federal
regulation should be free, *Minnesota Rate Cases*, 230
U. S. 352, 396; that the sale and delivery to the distrib-
uting companies was "an inseparable part of a transac-
tion in interstate commerce—not local but essentially
national in character—and enforcement of a selling price
in such a transaction places a direct burden upon such
commerce inconsistent with that freedom of interstate
trade which it was the purpose of the commerce clause
to secure and preserve;" that, in the *Pennsylvania Gas
Co.* case, the decision rested on the ground that the serv-

ice to the consumers for which the regulated charge was made, was " essentially local," and the things done were after the business in its essentially national aspect had come to an end—the supplying of local consumers being " a local business," even though the gas be brought from another State, in which the local interest is paramount and the interference with interstate commerce, if any, indirect and of minor importance; but that in the sale of gas in wholesale quantities, not to consumers, but to distributing companies for resale to consumers, where the transportation, sale and delivery constitutes an unbroken chain, fundamentally interstate from beginning to end, " the paramount interest is not local but national, admitting of and requiring uniformity of regulation," which, " even though it be the uniformity of governmental nonaction, may be highly necessary to preserve equality of opportunity and treatment among the various communities and States concerned.",

It is clear that the present case is controlled by the *Kansas Gas Co.* case. The order of the Rhode Island Commission is not, as in the *Pennsylvania Gas Co.* case, a regulation of the rates charged to local consumers, having merely an incidental effect upon interstate commerce, but is a regulation of the rates charged by the Narragansett Company for the interstate service to the Attleboro Company, which places a direct burden upon interstate commerce  Being the imposition of a direct burden upon interstate commerce, from which the State is restrained by the force of the Commerce Clause, it must necessarily fall, regardless of its purpose. *Shafer* v. *Farmers Grain Co.,* 268 U. S. 189, 199; *Real Silk Mills* v. *Portland,* 268 U. S. 325, 336; *Di Santo* v. *Pennsylvania, ante,* p. 34. It is immaterial that the Narragansett Company is a Rhode Island corporation subject to regulation by the Commission in its local business, or that Rhode Island is the State from which the electric current is transmitted

in interstate commerce, and not that in which it is received, as in the *Kansas Gas Co.* case. The forwarding state obviously has no more authority than the receiving State to place a direct burden upon interstate commerce. *Pennsylvania* v. *West Virginia,* 262 U. S. 553, 596. Nor is it material that the general business of the Narragansett Company appears to be chiefly local, while in the *Kansas Gas Co.* case the Company was principally engaged in interstate business. The test of the validity of a state regulation is not the character of the general business of the company, but whether the particular business which is regulated is essentially local or national in character; and if the regulation places a direct burden upon its interstate business it is none the less beyond the power of the State because this may be the smaller part of its general business. Furthermore, if Rhode Island could place a direct burden upon the interstate business of the Narragansett Company because this would result in indirect benefit to the customers of the Narragansett Company in Rhode Island, Massachusetts could, by parity of reasoning, reduce the rates on such interstate business in order to benefit the customers of the Attleboro Company in that State, who would have, in the aggregate, an interest in the interstate rate correlative to that of the customers of the Narragansett Company in Rhode Island. Plainly, however, the paramount interest in the interstate business carried on between the two companies is not local to either State, but is essentially national in character. The rate is therefore not subject to regulation by either of the two States in the guise of protection to their respective local interests; but, if such regulation is required it can only be attained by the exercise of the power vested in Congress. See *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204, 220; *Hanley* v. *Kansas City S. Ry. Co.,* 187 U. S. 617, 620.

The decree is accordingly

*Affirmed.*

MR. JUSTICE BRANDEIS, dissenting.

The business of the Narragansett Company is an intra-state one. The only electricity sold for use without the State is that agreed to be delivered to the Attleboro Company. That company takes less than 3 per cent. of the electricity produced and manufactured by the Narragansett, which has over 70,000 customers in Rhode Island. The problem is essentially local in character. The Commission found as a fact that continuance of the service to the Attleboro Company at the existing rate would prevent the Narragansett from performing its full duty towards its other customers and would be detrimental to the general public welfare. It issued the order specifically to prevent unjust discrimination and to prevent unjust increase in the price to other customers. The Narragansett, a public service corporation of Rhode Island, is subject to regulation by that State. The order complained of is clearly valid as an exercise of the police power, unless it violates the Commerce Clause.

The power of the State to regulate the selling price of electricity produced and distributed by it within the State and to prevent discrimination is not affected by the fact that the supply is furnished under a long-term contract. *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 U. S. 372. If the Commission lacks the power exercised, it is solely because the electricity is delivered for use in another State. That fact makes the transaction interstate commerce, and Congress has power to legislate on the subject. It has not done so, nor has it legislated on any allied subject, so there can be no contention that it has occupied the field. Nor is this a case in which it can be said that the silence of Congress is a command that the Rhode Island utility shall remain free from the public regulation—that it shall be free to discriminate against the citizens of the State by which it was incorporated and in which it does business. That

State may not, of course, obstruct or directly burden interstate commerce. But to prevent discrimination in the price of electricity wherever used does not obstruct or place a direct burden upon interstate commerce. Such regulation or action is unlike the burden imposed where a transportation rate is fixed. *Wabash, St. Louis & Pacific R. R. Co.* v. *Illinois,* 118 U. S. 557, or where property moving in interstate commerce is taxed. *Champlain Realty Co.* v. *Brattleboro,* 260 U. S. 366. The burden resulting from the order here in question resembles more nearly that increase in the cost of an article produced and to be delivered which arises by reason of higher taxes laid upon plant, operations or profits, *Old Dominion S. S. Co.* v. *Virginia,* 198 U. S. 299, 305; *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459, or which arises by reason of expenditures required under police regulations. *Pittsburgh & Southern Coal Co.* v. *Louisiana,* 156 U. S. 590; *Sligh* v. *Kirkwood,* 237 U. S. 52; *Merchants Exchange* v. *Missouri,* 248 U. S. 365, 368. It is like the regulation sustained in *Pennsylvania Gas Co.* v. *Public Service Commission,* 252 U. S. 23, where an order of the New York Public Service Commission fixed the rates at which gas piped from without the State and delivered directly to the consumers might be sold.

The case at bar seems to me distinguishable from others in which the state regulation has been held precluded by the Commerce Clause. In *Missouri* v. *Kansas Natural Gas Co.,* 265 U. S. 298, this Court held void a regulation which fixed the rates at which gas piped from without the State and delivered to distributing companies could be sold to the latter. The *Pennsylvania Gas Co.* case was distinguished in that there " the things done were local. . . . The business of supplying on demand, local consumers is a local business, even though the gas be brought from another State and drawn directly from interstate mains. . . . In such case the local interest

is paramount. . . . But here the sale of gas is in wholesale quantities, not to consumers, but to distributing companies for resale to consumers in numerous cities . . . in different states. The paramount interest is not local but national . . ." (p. 309). It was there emphasized that the " business of the Supply Company, with an exception not important here, [was] wholly interstate." (p. 306.) In *Shafer* v. *Farmers Grain Co.,* 268 U. S. 189, 192, where a North Dakota regulation was held invalid, " about 90 per cent. [of the wheat was] sold within the state to buyers who purchase for shipment, and ship, to terminal markets outside the state " and the " price paid at the country elevators rises and falls with the price at the terminal markets." In these two cases the burden was deemed a direct one because the businesses were essentially interstate. In *Pennsylvania* v. *West Virginia,* 262 U. S. 553, the state regulation was held void as discriminating against interstate commerce.

In my opinion the judgment below should be reversed.