234 F.2d 436
 15 P.U.R.3d 68
 KANSAS-NEBRASKA NATURAL GAS COMPANY, Inc., a Kansas
Corporation, Appellant,
v.
The CITY OF ST. EDWARD, NEBRASKA, a Municipal Corporation,
et al., Appellees.
KANSAS-NEBRASKA NATURAL GAS COMPANY, Inc., a Kansas
Corporation, Appellant,
v.
The CENTRAL CITY, NEBRASKA, a Municipal Corporation, et al.,
Appellees.
 Nos. 15489, 15490.
 United States Court of Appeals Eighth Circuit.
 June 14, 1956.
 
 James D. Conway, Hastings, Neb., and Frank D. Williams, Lincoln, Neb. (Elmer J. Jackson, Hastings, Neb., and Douglas Gleason, Ottawa, Kan., on the brief), for appellant.
 Earl Hasselbalch, St. Edward, Neb. (Charles H. Phares and Donald F. Sampson, Central City, Neb., on the brief), for appellees City of St. Edward, Neb. et al.
 Donald F. Sampson, Central City, Neb. (Charles H. Phares, Central City, Neb., and Earl Hasselbalch, St. Edward, Neb., on the brief), for appellees Central City, Neb. et al.
 Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.
 GARDNER, Chief Judge.
 
 
 1
 These were equitable actions brought by appellant against appellees seeking to enjoin appellees from preventing appellant from putting into effect new rates for natural gas distributed and sold to inhabitants of said cities. The mayor and councilmen of the respective cities were also joined as parties defendant. Both the named cities are Nebraska cities of the second class. The actions were consolidated for purposes of trial and for purposes of appeal and they are presented here on a single record. In the course of this opinion we shall refer to the parties as they were designated in the trial court.
 
 
 2
 Plaintiff, at all times pertinent, was and now is a corporation organized and existing under the laws of the State of Kansas and during all such times were engaged in the purchase, production, transmission, distribution and sale, both at wholesale and retail, of natural gas within the States of Kansas, Colorado and Nebraska. Its principal supply of natural gas is obtained from the Hugoton Natural Gas field located largely in southwestern Kansas, but extending into Oklahoma and Texas. It also secures some, though a comparatively small portion, of its gas in northeastern Colorado and southwestern Nebraska. It both produces natural gas and acquires it by purchase. The plaintiff owns and operates a coordinated natural gas gathering, transmission, and distribution system whereby natural gas produced or purchased by it is transmitted from the point of its acquisition, through pipe lines, to the points of its final disposition and sale. This system extends from its natural gas sources in Kansas northerly into Nebraska and is connected with like elements of it originating at acquisition points in Colorado and Nebraska, with the consequence that natural gas from the three states is commingled for transmission to, and sale within, any of them; and from all of such states plaintiff collects, transmits and distributes natural gas for sale both at wholesale and at retail within the state of Nebraska. At all times here pertinent it sold the gas to the inhabitants of municipalities in the state of Nebraska including the inhabitants of defendant cities.
 
 
 3
 Plaintiff was granted a franchise by each of the defendant cities. Defendant Central City first passed an ordinance February 11, 1946, granting plaintiff a franchise for a period of twenty-five years to construct and maintain within the City of Central City a natural gas distribution system and to engage in the sale of natural gas to the inhabitants thereof. By ordinance passed October 13, 1947, Central City amended the prior ordinance to establish a lower schedule or rates. On October 2, 1950, defendant City of St. Edward passed a similar franchise ordinance. Each of these ordinances fixed a maximum rate which might be charged for the term of the franchise.
 
 
 4
 As grounds for injunctional relief plaintiff alleged that the rates established for gas customers in each of the franchise ordinances granted by defendant cities failed to give plaintiff a fair and reasonable return on its invested capital required for the service of gas customers in defendant cities; that prior to commencement of the actions plaintiff had submitted to each of the defendant cities a request for an increase in rates to provide it with sufficient revenue to earn it a fair and reasonable return on its invested capital required for the service of the gas customers in defendant cities and that said requests were supported by detailed information concerning plaintiff's business, showing the necessity for the increase requested in such rates; that each of the defendant cities failed and refused, though requested so to do, to establish for plaintiff a new rate schedule which would provide a reasonable return on its invested capital; that in so refusing the reasonable request of the plaintiff to establish a new rate schedule defendants acted in a confiscatory manner, thus depriving plaintiff of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and in violation of Article I, Section 3, of the Constitution of Nebraska; that the rates which plaintiff asked defendant cities to establish are necessary to provide plaintiff with a fair and reasonable return on its invested capital; and that for the injury complained of and threatened plaintiff has no adequate remedy at law.
 
 
 5
 Based upon these allegations plaintiff asked for injunction enjoining defendants from preventing it from putting the requested rates into effect and collecting same.
 
 
 6
 Each of the defendants interposed a motion to dismiss the actions on the grounds, among others, that:
 
 
 7
 '* * * said complaint, as amended, fails to state a claim upon which relief can be granted to the plaintiff.
 
 
 8
 '* * * this Court lacks jurisdiction over the subject matter of this action for the reason that this is an action falling within the provisions of Sec. 1342, Title 28 U.S.C.A. * * *'
 
 
 9
 The court did not pass upon these motions as filed nor on the motions for preliminary injunctions, expressing the view that disposition of the motions should be deferred until final trial. D.C., 135 F.Supp. 629.
 
 
 10
 Each defendant answered, in effect pleading that the franchise ordinance establishing the maximum rates was passed and adopted by the defendant cities at the request and solicitation of the plaintiff and that the ordinance constitutes a valid and binding contract based on mutual and valuable considerations and that the plaintiff is estopped from denying the validity of such franchise contract or the rates prescribed therein and is estopped from claiming or asserting that it has been deprived of its property without due process of law.
 
 
 11
 On trial of the issues joined the court found that the rates established by the city ordinances in question were confiscatory but that they were established by contract induced by plaintiff for a valuable consideration and that plaintiff was estopped from denying the validity of the franchise contracts. The court also held that such rates only indirectly and incidentally affected interstate commerce but did not interfere with interstate commerce. The court also concluded that Section 1342, Title 28 U.S.C.A., referred to in the record as the Johnson Act, prohibited any relief by way of injunction. Based on the findings of fact and conclusions of law thus made and entered the court entered judgments dismissing the actions on their merits as well as for lack of jurisdiction. The judgments do not on their face show that the actions were dismissed for lack of jurisdiction but this may be inferred from the court's memorandum opinion. D.C., 134 F.Supp. 809.
 
 
 12
 It was contended by the plaintiff below, and it renews the same contentions here, that: (1) in the event the Johnson Act applies to the actions instituted by plaintiff the trial court was without jurisdiction to dispose of said actions on their merits so as to foreclose plaintiff from seeking relief in the Nebraska state courts; (2) the distribution and sale of natural gas in the defendant cities by plaintiff under the facts stated above constitutes interstate commerce; (3) the refusal of defendants to grant plaintiff relief from a confiscatory rate is an interference with interstate commerce which is excepted from the prohibition of the Johnson Act; (4) cities of the second class in Nebraska were, by Section 17-125, R.S.N.1943 (Reissue 1954), given jurisdiction to regulate rates for the distribution of natural gas and defendants retained such power in Section 4 of the franchise ordinances and their refusal to approve the proposed rates takes plaintiff's property without due process of law.
 
 
 13
 As has been observed, the jurisdiction of the Federal Court to hear and determine these actions was challenged by defendants' motions to dismiss for want of jurisdiction and this contention was urged throughout the trial and is here renewed by the defendants. Lack of jurisdiction in a Federal Court over the subject matter of litigation is always open for consideration as jurisdiction over the subject matter cannot be conferred by waiver of the parties and when such lack of jurisdiction is brought to the attention of the trial court it should decline jurisdiction even though the question be not urged by either party to the litigation. United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263; Kern v. Standard Oil Co., 8 Cir., 228 F.2d 699, 701; Mulligan v. Federal Land Bank of Omaha, 8 Cir., 129 F.2d 438; Rule 12(h), Federal Rules of Civil Procedure, 28 U.S.C.A. The question was considered by us in Kern v. Standard Oil Co., supra, decision in which was handed down after the trial of these actions, and in the course of the opinion we said:
 
 
 14
 'Rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides 'that, whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'
 
 
 15
 'Lack of jurisdiction of a federal trial court touching the subject matter of litigation cannot be waived by the parties or ignored by a federal appellate court, Chicago, Burlington & Quincy Railway Co. v. Willard, supra, at pages 419-421 of 220 U.S. (413), at pages 461-462 of 31 S.Ct. (460, 55 L.Ed. 521), and if jurisdiction does not exist the trial court must of its own motion decline to proceed in the case. United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263. If a federal district court tries a case with respect to which jurisdiction is lacking, the jurisdiction of the appellate court, on review, extends only to correcting the error of the trial court in entertaining the action. United States v. Corrick, supra, at page 440 of 298 U.S., at page 831 of 56 S.Ct. A federal appellate court, in a case under review, must satisfy itself not only of its own jurisdiction, but also of that of the district court. Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338; Illinois Terminal R. Co. v. Friedman, supra (8 Cir.), 208 F.2d 675, 676.'
 
 
 16
 We must therefore first determine whether or not the trial court had jurisdiction over the subject matter of these actions.
 
 
 17
 Section 1342, Title 28 U.S.C.A., provides as follows:
 
 
 18
 'The district courts shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a State administrative agency or a rate-making body of a State political subdivision, where:
 
 
 19
 '(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,
 
 
 20
 '(2) The order does not interfere with interstate commerce; and,
 
 
 21
 '(3) The order has been made after reasonable notice and hearing; and,
 
 
 22
 '(4) A plain, speedy and efficient remedy may be had in the courts of such State.'
 
 
 23
 Section 717, Title 15 U.S.C.A., referred to in the record as the Natural Gas Act, provides in part as follows:
 
 
 24
 'The provisions of this chapter shall apply to the * * * sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such * * * sale, but shall not apply to any other * * * sale of natural gas or to the local distribution of natural gas.'
 
 
 25
 In the instant case jurisdiction is dependent upon diversity of citizenship and the alleged repugnance of the franchise ordinances to the Federal Constitution. The sales of gas by the plaintiff are made direct to the consumers who are the inhabitants of the defendant cities, and the defendant cities, when they passed the franchise ordinances, were authorized rate-making bodies. There seems no doubt that the plaintiff can have 'a plain, speedy and efficient remedy' in the state courts. But it is claimed that the inadequate rate provided by the ordinances constituted an interference with interstate commerce. Conceding, without deciding, that the rates are confiscatory and, hence, deprive plaintiff of its property without due process of law, it does not necessarily follow that Congress has conferred jurisdiction on the Federal Courts to determine these issues. Doubtless Congress could have occupied the entire field regulating this interstate transportation and sale of natural gas, but confessedly it was not required so to do and by the Natural Gas Act it clearly exempted 'local distribution of natural gas' from the provisions of the Act, leaving the regulation of local distribution and sale of natural gas to state supervision and control. Panhandle Eastern Pipe Line Co. v. Michigan Public Service Commission, 341 U.S. 329, 71 S.Ct. 777, 95 L.Ed. 993; United States v. Public Utilities Commission of California, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020; Illinois Natural Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 62 S.Ct. 384, 86 L.Ed. 371; General Telephone Company of Southwest v. Robinson, D.C.Ark., 132 F.Supp. 39. The teaching of the decision in Panhandle Eastern Pipe Line Co. v. Michigan Public Service Commission, supra (341 U.S. 329, 71 S.Ct. 780), is, we think, determinative of the jurisdictional issue in this case. In the course of the opinion in that case it is said:
 
 
 26
 'By this Act Congress occupied only a part of the field. As to sales, only the sale of gas in interstate commerce for resale was covered. Direct sales for consumptive use were designedly left to state regulation. Panhandle-Indiana, 332 U.S. at pages 516-518, 68 S.Ct. at pages 194, 196, 92 L.Ed. 128. Speaking further of the division of regulatory authority over interstate commerce in natural gas, this Court said in the same case:
 
 
 27
 "It would be an exceedingly incongruous result if a statute so motivated, designed and shaped to bring about more effective regulation, and particularly more effective state regulation, were construed in the teeth of those objects, and the import of its wording as well, to cut down regulatory power and to do so in a manner making the states less capable of regulation than before the statute's adoption. Yet this, in effect, is what appellant asks us to do. For the essence of its position, apart from standing directly on the commerce clause, is that Congress by enacting the Natural Gas Act has 'occupied the field,' i.e., the entire field open to federal regulation, and thus has relieved its direct industrial sales of any subordination to state control.
 
 
 28
 "The exact opposite is the fact. Congress, it is true, occupied a field. But it was meticulous to take in only territory which this Court had held the states could not reach. That area did not include direct consumer sales, whether for industrial or other uses. Those sales had been regulated by the states and the regulation had been repeatedly sustained. In no instance reaching this Court had it been stricken down." (Emphasis supplied.)The doctrine of the above case is, in effect, reiterated in United States v. Public Utilities Commission of California, supra, where among other things the court said (345 U.S. 295, 73 S.Ct. 711):
 
 
 29
 '* * * the jurisdictional lines between local and national authority were not finally determined until this Court's opinion in Public Utilities Comm. v. Attleboro Steam & Electric Co., 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 549. * * * Attleboro reiterated and accepted the holding of Pennsylvania Gas Co. v. Public Service Comm., 252 U.S. 23, 40 S.Ct. 279, 64 L.Ed. 434, that sales across the state line direct to consumers is a local matter within the authority of the agency of the importing state.'
 
 
 30
 We think it is clear, as stated in Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 768, 95 L.Ed. 1002, that whatever rights plaintiff may have 'are to be pursued through the state courts.'
 
 
 31
 As has been observed, the court dismissed the actions on their merits and for want of jurisdiction. Possibly the court had in mind that if in error as to the lack of jurisdiction it would not be necessary to remand the cases for further proceedings, and for that reason proceeded to determine the merits of the actions. As we are of the view that the court lacked jurisdiction its decision on the merits of the issues should not be permitted to stand, as these issues are triable in the state court. Having reached the decision that the trial court, because a Federal Court, was without jurisdiction of the subject matter of these actions we pretermit consideration of the other issues discussed in the briefs of counsel for the respective parties.
 
 
 32
 The cases are therefore remanded to the trial court with directions to vacate and set aside its findings, conclusions and judgments and to enter in lieu thereof judgments dismissing the actions for lack of jurisdiction.