ARKANSAS PUBLIC SERVICE COMMISSION *v.*
ARKANSAS ELECTRIC COOPERATIVE
CORPORATION

80-313                                        618 S.W. 2d 151

Supreme Court of Arkansas
Opinion delivered June 22, 1981
[Rehearing denied July 20, 1981.]

*Jeff Broadwater*, for appellant.

*Leland F. Leatherman* and *Allen, Cabe & Lester,* for appellee.

DARRELL HICKMAN, Justice. In 1979 the Public Service Commission decided to exercise jurisdiction over the rates and charges of the Arkansas Electric Cooperative Corporation.

The hearing preceding the order and the issues on appeal form only one question, whether the Commission is attempting to regulate wholesale interstate sales of electricity. The Commission concluded that it was not and could, therefore, assume jurisdiction.

Arkansas Electric Cooperative Corporation was formed to serve its seventeen members who are all Arkansas electric cooperatives. The only Arkansas cooperative that is not a member is one located at Newport, Arkansas. The appellee corporation was formed by the seventeen cooperatives so that the customers of the cooperatives could be better served; borrowing and purchasing power are more economical through a joint effort.

The appellee generates some of its electricity and buys the remainder from utility companies located in Arkansas. Apparently the appellee sells some of its electricity to these same utility companies when there is a surplus of energy. Other than those sales, all the power generated and bought by the appellee is sold to the seventeen Arkansas cooperatives. It is conceded that these cooperatives must buy the power and that the rate is determined by the appellee. It is not a negotiated rate and the rate is not regulated by any state or federal agency.

The PSC decided that it could exercise jurisdiction over those sales which were "essentially local." In its order the PSC said, "This Commission would not attempt to regulate the rate at which AECC purchases power in interstate commerce and that rate, of course, must act as a base for the price at which it resells that power to its members."

The corporation appealed the order to circuit court and the court reversed the Commission's decision. The court found that the sales of the corporation were wholesale sales in interstate commerce over which the PSC had no jurisdiction.

We find the Commission had the authority by Arkansas statutes to exercise jurisdiction and that this authority is neither preempted by any federal law nor prohibited by the Commerce Clause of the United States Constitution.

The Arkansas statutes give the Commission the authority over public utilities and the appellee is such a utility. *See* Ark. Stat. Ann. § 73-201, et seq. (Repl. 1979). There are no exceptions for regulating wholesale sales. Ark. Stat. Ann. § 73-202(a) (Repl. 1979).

The Commission concedes it cannot regulate wholesale sales in interstate commerce and contends that it has no intention of doing so. The appellee cites authority that the Commission's order will do just that.

The distinguishing features in this case are as follows: The appellee is an Arkansas corporation formed for the purpose of serving seventeen Arkansas cooperatives. While it may incidentally and from time to time buy or sell electricity that may cross a state line, that is not its purpose. The utility companies that it buys from and sells surplus electricity to do serve customers in other states. Those are Arkansas Power & Light Co., which is a part of Middle South Utilities, Southwest Electric Power Co., and Southwestern Power Administration.

But the Commission found:

> ... AECC's business, indeed its very reason for existence, is the generation, purchase and transmission of electricity for and to its members, seventeen Arkansas electricity distribution cooperatives, who retail the electricity to their members in this State.

The appellee cites several cases as authority for its position. They are all distinguishable. *Public Utilities Commission* v. *Attleboro Steam & Electric Co.*, 273 U.S. 83 (1927) is not controlling because in that case a Rhode Island utility company had a wholesale customer in Massachusetts. The court found the regulation by Rhode Island was not local but essentially national. The Court prevented Rhode Island from setting the rate. The appellee in this case exists to serve seventeen Arkansas cooperatives; it sells to none in other states.

The case of *Federal Power Commission* v. *Southern California Edison Co.*, 376 U.S. 205 (1965) is not controlling because that case interpreted the Federal Power Act and did not involve a cooperative. The Federal Power Commission took jurisdiction over wholesale rates charged by Edison, a California utility company, to the city of Colton, which is also in California. A small amount of power sold by Edison originated in other states. This case does not control because it concerned an interpretation of the Federal Power Act. The Federal Power Commission has held that the Federal Power Act does not apply to cooperatives financed by the Rural Electrification Administration. *Re Dairyland Power Cooperative*, 67 PUR 3d 340 (1967). The appellee concedes that the Federal Power Commission has not attempted to regulate its rates.

*Tri-State Generation & Transmission Association* v. *Public Service Commission*, 412 F. 2d 115 (10th Cir. 1969) is not controlling because of distinguishing facts. Cooperatives in three states, Colorado, Wyoming, and Nebraska, formed a corporation just like the appellee. The Circuit Court of Appeals found the Wyoming Public Service Commission had prevented the Wyoming cooperative from paying contractual obligations to Tri-State which imposed a burden on interstate commerce. The appellee consists of cooperatives only in Arkansas and there is no evidence of a burden on interstate commerce.

In *Missouri* v. *Kansas Natural Gas Co.*, 265 U.S. 298 (1924), Missouri sought to regulate a situation where power originating in Oklahoma passed through Kansas and was

sold in Missouri. The Court held that the sale of this power was "an inseparable part of a transaction in Interstate Commerce — not local, but essentially national in character . . ." In distinguishing this case, the appellant Commission found:

> . . . [I]t seems to us that the rates and charges of AECC that could effectively be regulated by this Commission are for transactions essentially local in character. Unlike *Kansas Gas*, [*Missouri* v. *Kansas Natural Gas Co.*, 265 U.S. 98 (1924)] which sold in an open interstate market, AECC exists to serve its members. Its transactions with them do not constitute "an unbroken chain, fundamentally interstate from beginning to end." Those transactions begin and end here in Arkansas. This service is hardly "of the character which require(s) general and uniform regulation of rates by Congressional action." Unlike the Narragansett Company, AECC does not serve customers in other states whose authorities might retaliate, to the detriment of interstate commerce. Unlike Rhode Island, this Commission does not seek to regulate, nor do we read our statutes as requiring us to regulate, interstate transactions of AECC, if there be any. If our regulation of rates charged to local customers has an "effect" unto interstate commerce, it can only be incidental, given a continuation of the present circumstances and policies of the company, which there is no reason not to expect. (That issue, however, can properly be dealt with only when and if it arises.) Nor does it matter that AECC's transactions with its members may be characterized as wholesale, for, as the Court said in *Attleboro* [*Public Utilities Commission* v. *Attleboro Steam & Electric Co.*, 273 U.S. 83 (1927)] the test "is not the character of the general business . . . but whether the particular business which is regulated is essentially local or national in character." The particular business this Commission must regulate, between AECC and its members, is decidedly local, having its paramount impacts and consequences in Arkansas and having little or no relation to any other place.

The hearing did not delve into whether the appellee had been fair in its charges to its seventeen members. The only suggestion that the appellee's costs might be excessive was a reference to the fact that the appellee had thirty-four board members who met once a month and received $75.00 per diem for that meeting.

We find the appellant has the authority to take jurisdiction as it proposes and reverse the judgment of the circuit court.

Reversed.

HOLT and DUDLEY, JJ., dissent.

GEORGE ROSE SMITH, J., not participating.

ROBERT H. DUDLEY, Justice, dissenting. Appellee has two sources of electric power. One is from generating plants located in Arkansas. The other is from purchasing electricity from Southwest Electric Power Company, Southwestern Power Administration, Arkansas Power & Light Company and Ark-Mo Power Company. This purchased power is generated at facilities located in Oklahoma, Missouri, Texas or Arkansas and is transmitted to appellee from multi-state integrated systems or grids so that it is impossible to identify the generating facility which produced any particular energy.

Appellee sells power to A.P. & L. and to S.P.A. That power goes into multi-state grids or integrated systems maintained by those purchasers and may be transmitted and consumed in Oklahoma, Missouri, Texas or Arkansas.

Appellee is engaged in interstate commerce. The purchasing from interstate sellers of some of the power which it, in turn, sells to its member cooperatives and to other purchasers is the same sort of transaction involved in the case of *Tri-State Generation & Transmission Ass'n., Inc.* v. *Public Service Commission of Wyoming*, 412 F. 2d 115 (10th Cir. 1969). Tri-State was a nonprofit cooperative corporation as is appellee. Tri-State had 28 R.E.A. cooperative members in

three states who sold electricity at retail, while appellee has 17 R.E.A. cooperative members in Arkansas who sell electricity at retail. In *Tri-State*, the 28 member cooperatives were subject to regulation by the states, and in this case the 17-member cooperatives are regulated by the appellant P.S.C. The Tenth Circuit Court of Appeals held that Tri-State was clearly engaged in interstate commerce and the Wyoming P.S.C. action patently *had the potential of interfering with interstate commerce.* Likewise, appellee is clearly engaged in interstate commerce, and the P.S.C. action patently has the potential of interfering with interstate commerce. The majority opinion dismisses *Tri-State* by stating it "is not controlling because of distinguishing facts." Even the P.S.C. does not go that far as the Commission order states: "In candor, we should add that, for the reasons stated in the dissent therefrom, we do not think *Tri-State* was correctly decided ..." and also that the P.S.C. will not nullify appellee's "ability to pass on the cost of purchased power to its members, as Wyoming seemingly did or was perceived by the Court of Appeals to have potentially done."

There are constitutional limitations upon state regulation of interstate commerce. In *Public Utilities Commission of Rhode Island* v. *Attleboro Steam & Electric Company*, 273 U.S. 83 (1927), a Rhode Island company sold electricity at wholesale to a Massachusetts company. The Supreme Court denied Rhode Island the power to regulate the transaction for the sale of energy at wholesale. This was in 1927, before Congress had passed the Federal Power Act or any similar pre-emption statute, and the Court ruled that since the sale was of concern to both Rhode Island and Massachusetts it was "national in character" and not subject to state regulation. Consequently, "if such regulation is required it can only be attained by the exercise of power in Congress." Hence, the commerce clause is a limitation upon state power, whether or not Congress has chosen to regulate.

Congress undertook federal regulation through the Federal Power Act in 1935 and the Natural Gas Act in 1938. The premise on which Congress acted was that constitutional limitations upon state regulatory power made federal regulation essential if major aspects of interstate trans-

mission and sale were not to go unregulated. "What Congress did was to adopt the test developed in the *Attleboro* line which denied state power to regulate a sale 'at wholesale to local distributing companies' and allowed state regulation of a sale at 'local retail rates to ultimate consumers.' " *Federal Power Commission* v. *Southern California Edison Co., et al*, 376 U.S. 205 at 214 (1964), discussed in treatises and articles as the "Colton case."

In the *Colton* case, supra, Southern California Edison Company, a public electric utility company, operating in central and southern California, sold energy only to customers in its California territory. These customers included the City of Colton, which used some of the power for municipal purposes but resold the bulk of the power to residential and commercial customers. The California Public Service Commission had exercised jurisdiction over the Edison-Colton energy transaction for years. The Federal Power Commission asserted jurisdiction and ultimately the Supreme Court of the United States ruled that the state could not regulate this transaction and that the Federal Power Commission could.

The majority inferentially concedes that the P.S.C. cannot regulate wholesale sales in interstate commerce. To avoid this issue, and the *Colton* case, the majority goes outside the abstracts submitted in this case, goes to the record to reverse a trial judge, and cites a footnote to the order stating that there will be no attempt to regulate interstate commerce. However, the ordering clause of the decree provides, "Henceforth, A.E.C.C. should regard itself as subject to the jurisdiction of this Commission and within thirty days shall file with the Secretary its schedules and tariffs for approval pursuant to applicable law."

Even if it should attempt to regulate only intrastate sales it would be beyond the reach of the P.S.C. for, as stated, the regulation of the sale of electric energy at wholesale patently has the potential of interfering with interstate commerce.

The majority opinion also states that power occasion-

ally ends up in another state, indicating this is a local operation. Yet the P.S.C. has never supplied one single figure to set out percentages of interstate versus intrastate power. Yet it is certain that interstate and intrastate power comes and goes by interstate transmission grids as appellee has very little transmission capability of its own. Even so, that is not of great significance for the Supreme Court in the *Colton* case ruled out any case by case impact analysis deciding this type of case:

> ". . . In short, our decisions have squarely rejected the view of the Court of Appeals that the scope of the FPC jurisdiction over interstate sales of gas or electricity at wholesale is to be determined by a case-by-case analysis of the impact of state regulation upon the national interest. Rather, Congress meant to draw a bright line easily ascertained, between state and federal jurisdiction, making unnecessary such case by case analysis . . ." 376 U.S. 205, at 215.

That bright line is that states may not regulate interstate sales of electricity at wholesale to local distributing companies, but states may regulate rates at local retail to ultimate consumers.

The appellant contends that the Federal Power Act does not apply to electric cooperatives. This is not a determining factor for the commerce clause is a limitation upon state power whether or not Congress has chosen to regulate. However, it is worth examining. The material facts in this case are the same as those set out in *Salt River Project Agricultural Improvement and Power District* v. *Federal Power Commission*, 391 F. 2d 470 at 473 (D.C. Cir. 1968). That court observed:

> Though REA regulation and supervision of cooperatives are, in many respects, far more comprehensive than those which the Federal Power Commission exercises over investor-owned utilities, there are certain areas, such as rate-making, where the cooperatives enjoy a freer hand. But it is in these areas that, by their structural nature, the cooperatives are effectively self-

regulating. They are completely owned and controlled by their consumer-members, and only consumers can become members. They are non-profit. Each member has a single vote in the affairs of the cooperative, and service is essentially limited to members. No officer receives a salary for his services and officers and directors are prohibited from engaging in any transactions with the cooperative from which they can earn any profit.

The above paragraph, with an additional factor, is applicable to the present case. The additional factor is that much of the energy generated by appellee is sold to its owners, the 17-member cooperatives, who are fully regulated by appellant. The member cooperatives cannot pass on any increases in rates without appellant's approval. The fact that the Federal Power Act does not apply is insignificant.

Finally, there is no practical reason for the P.S.C. to regulate this non-profit wholesale cooperative. It is simply an additional layer of governmental regulation.

I dissent.