691 F.2d 444
 The STATE OF UTAH; the Utah Public Service Commission; the
Division of Public Utilities of the Department of
Business Regulation of the State of
Utah, Petitioners,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
Sierra Pacific Power Company, Intervenor.
 No. 80-2167.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 10, 1982.
 
 Craig R. Rich and Stephen R. Randle, Sp. Asst. Attys. Gen., Salt Lake City, Utah (David L. Wilkinson, Utah Atty. Gen., Salt Lake City, Utah, with them on the brief), for petitioners.
 Stephen R. Melton, Atty., F. E. R. C., Washington, D. C. (Jerome Nelson, Acting Gen. Counsel and Jerome M. Feit, Deputy Sol., F. E. R. C., Washington, D. C., with him on the brief), for respondent.
 John Madariaga, Gen. Counsel, Sierra Pacific Power Co., Reno, Nev., Reuben Goldberg, Glenn W. Letham, and Channing D. Strother, Jr., Goldberg, Fieldman & Letham, P. C., Washington, D. C., for intervenor.
 Before DOYLE, McKAY and LOGAN, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is a petition for a review of an order of the Federal Energy Regulatory Commission. The Federal Energy Regulatory Commission issued a declaratory order without a hearing. Sierra Pacific Power Company has intervened and has filed a brief. The petitioners include the Utah Public Service Commission and the Division of Public Utilities of the Department of Business Regulation of Utah and the State of Utah.
 
 
 2
 This matter comes to us on a petition for review of an order of the Federal Energy Regulatory Commission, and, actually, it is a jurisdiction conflict between the Federal Power Commission, which is now called the Federal Energy Regulatory Commission, and the Utah Public Service Commission.
 
 
 3
 The Utah Power and Light Company is a public utility which provides electric service to retail customers in Utah, Idaho and Wyoming, but mostly Utah. An excess of 70% of Utah Power's total revenues are derived from Utah customers. Utah Power also provides wholesale electric service for resale and as to this part of its business, the rates are established by the Federal Energy Regulatory Commission referred to above as the Federal Power Commission, which was its former name. Intervenor Sierra Pacific Power Company was also an electric utility providing retail electric in Nevada and California back in 1971.
 
 
 4
 Utah Power and Sierra Pacific agreed to interconnect their transmission systems. Utah Power agreed to provide Sierra Pacific with 50,000 kilowatts of firm power per month starting October 1, 1974. The Federal Law, 16 U.S.C. § 824(d) requires that a contract of that nature be submitted to FERC. It was not submitted at that time to any Utah Public Service Commission. The Federal Commission authorized commencement of service by letter order without a hearing on February 11, 1975.
 
 
 5
 The 1971 agreement was amended by the parties on September 12, 1977, in order to provide that commencing October 1, 1977, Utah Power and Light would increase its firm electric service and provide an additional 100 megowatts of firm power in the summer with 150 megowatts in the winter. There was an option on the part of Sierra Pacific to increase each of these after 1979 in the amount of an additional 50 mws. The term for sale of firm power was set at ten years to continue on an annual basis, with at least five years' notice required for termination.
 
 
 6
 The Utah Public Service Commission had issued an order requiring Utah Power to submit for its approval all contracts for the sale of power to any customer or other utility, either in or out of the State of Utah, if the applicant intended to use any facilities over which the Commission had jurisdiction. In accordance with that Utah Power filed the amended agreement with the Utah Commission. Sierra Pacific made a special appearance contesting the Utah Commission's jurisdiction. Utah Power also filed with the FERC, by letter application, the same documents. The FERC accepted the agreement for filing without a hearing, designating the agreement as a rate schedule effective October 1, 1977.
 
 
 7
 The position taken by the Utah Public Service Commission was that (1) it had jurisdiction with respect to facilities within Utah being used to generate and transmit energy to Sierra Pacific; (2) that the rates under which power and energy would be sold to Sierra Pacific were subject to regulation by the FERC; (3) that Utah Power in the scheduling of new generating capacity through 1984 had considered and planned for the amounts of power to be sold to Sierra Pacific; these sales would not jeopardize the available power for the present and future customers of Utah Power within Utah; (4) that the Utah Commission has jurisdiction over Utah Power as to its operations in the State of Utah, including the firm energy to be supplied to Sierra Pacific, and over the electrical generation and transmission facilities of Utah Power within the state to be used for supplying such service; and (5) that it was not in the best interest of the Utah customers of Utah Power that the subject agreement be approved as written. The Commission concluded that the agreement should be conditionally approved subject to the limitation that Utah Power supply firm power and energy thereunder only until December 31, 1984, with no service to be supplied thereafter unless the agreement was modified, and as modified, it received the approval of the Commission and any other regulatory body having jurisdiction.
 
 
 8
 In accordance with these findings, Utah Public Service ordered Utah Power to terminate firm service under the resale electric agreement as of December 31, 1984, unless there could be a renegotiation of the contract providing for rates reflecting incremental costs of supplying such service.
 
 
 9
 Utah Power chose to accept and abide by the order of the Utah Commission as long as it remained in effect. Sierra Pacific filed a petition for a declaratory order with the FERC. It requested an order that the FERC has exclusive jurisdiction over the interconnection agreement between Sierra Pacific and Utah Power.
 
 
 10
 The FERC decided the matter without an evidentiary hearing, holding that it was unnecessary. It held that it had jurisdiction under the Federal Power Act to consider the interconnection agreement because it provided for transmission for resale of electric energy in interstate commerce. It directed Utah Power to comply with the terms of the amended agreement. The State of Utah and Utah Power applied for a rehearing before the FERC but this was denied. It also found that this order was limited to determining jurisdiction over a rate schedule. Utah Power was not ordered by FERC to install further generating facilities nor did FERC speculate on the manner in which Utah Power would meet its commitment to Sierra Pacific.
 
 
 11
 The issue which emerges is whether the Federal Energy Regulatory Commission has exclusive jurisdiction under the Federal Power Act as to the wholesale power contract between the two power companies to the exclusion of the Utah Commission.
 
 
 12
 Our conclusion from reading the cases is that it does have exclusive authority in the area under consideration. Generally speaking, the cases hold that where there is a sale at wholesale of electric energy in interstate commerce that the jurisdiction of the FERC is exclusive. For example, in Public Utilities Commission of Rhode Island v. Attleboro Steam & Electric Co., 273 U.S. 83, 47 S.Ct. 294, 71 L.Ed. 54 (1927). In that case the Public Utilities Commission of Rhode Island assumed jurisdiction over a dispute involving the Attleboro Steam & Electric Co., and held that even though there was an alleged operating loss without any return on the investment, that the state utility commission did not have the authority to assume jurisdiction of it. The Supreme Court held further that regulation of the rates Narragansett charged Attleboro, by the Rhode Island Commission, placed a direct burden on interstate commerce, which is prohibited by the commerce clause, and therefore, is invalid, regardless of the purpose. The rate is not subject to regulation by either of the two states in the guise of protection of their respective local interests.
 
 
 13
 Congress interpreted this ruling as prohibiting state control of wholesale rates for electrical energy in interstate commerce, and so it gave the Federal Power Commission the authority under Part II of the Federal Power Act. See Federal Power Commission v. Southern California Edison Co., 376 U.S. 205, 84 S.Ct. 644, 11 L.Ed.2d 638 (1964).
 
 
 14
 Subchapter II of the Federal Power Act deals specifically with this issue. 16 U.S.C. § 824(a). The declaration there provides:
 
 
 15
 It is declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest, and that federal regulation of matters relating to generation to the extent provided in this subchapter and subchapter III of this chapter, and of that part of such business which consists of the transmission of electric energy in interstate commerce is necessary in the public interest, such federal regulation, however, to extend only to those matters which are not subject to regulation by the states.
 
 
 16
 16 U.S.C. § 824(b), until amended in 1978, provided:
 
 
 17
 The provisions of this subchapter shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but except as provided in paragraph (2) shall not apply to any other sale of electric energy or deprive a State or State commission of its lawful authority now exercised over the exportation of hydroelectric energy which is transmitted across a State line. The commission shall have jurisdiction over all facilities for such transmission or sale of electric energy, but shall not have jurisdiction * * * over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter."
 
 
 18
 It appears that the purpose of the 1935 amendments was to vest the federal agency with power to regulate sales of electricity such as that here presented. Such authority had been denied to the states by Attleboro. See Jersey Central Power and Light Co. v. Federal Power Commission, 319 U.S. 61, 63 S.Ct. 953, 87 L.Ed. 1258 (1943) and United States v. Public Utilities Commission of California, 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).
 
 
 19
 It has been recognized that the states have the power to regulate rates for intrastate sales of electric energy and interstate retail sales, but not the wholesale type of sales which are here involved.
 
 
 20
 The decisions of the Supreme Court just cited, particularly Federal Power Commission v. Southern California Edison Co., 376 U.S. 205, 84 S.Ct. 644, 11 L.Ed.2d 638 (1964), have recognized the exclusive jurisdiction of the Federal Energy Regulatory Commission over rates charged for the wholesale distribution of electric energy in interstate commerce, regardless of the source of production. The Supreme Court said that this issue will not be decided on a case by case basis. The Court said that the Congress intended to clearly distinguish the authority of the state regulatory body and the federal one. The authority of the Federal Power Commission was intended to be plenary and extend to all sales in interstate commerce except those which Congress had explicitly held to be subject to regulation by the states. The Southern California Edison case upheld an order of the Federal Power Commission asserting jurisdiction over the rates charged by Southern California Edison to Colton, a California city. Some of the energy as marketed originated in Nevada and Arizona.
 
 
 21
 There is a recent case, New England Power Company v. New Hampshire, 455 U.S. 33, 102 S.Ct. 1096, 71 L.Ed.2d 188 (1982). There, the Court struck down an attempt by New Hampshire to restrict the flow of privately owned and produced electricity in interstate commerce, in a manner inconsistent with the Commerce Clause. The Court recognized that its cases had consistently held that the Commerce Clause of the Constitution precluded a state from mandating that its residents be given a preferred right of access, over out-of-state consumers, to natural resources located within its borders or to products derived therefrom. The Court said:
 
 
 22
 (A) state is without power to prevent privately owned articles of trade from being shipped and sold in interstate commerce on the ground that they are required to satisfy local demands or because they are needed by the people of the state. Id.
 
 
 23
 The final argument that is made by the Utah Commission is that the wholesale contract in question requires the enlargement of generating facilities, a matter that is subject to state authority. The Utah Commission admits that the FERC does have exclusive jurisdiction over rates, but contends that this is not the main issue in this case. The assertion is that requiring Utah Power to comply with the contract to provide firm service to Sierra Pacific is an indirect order to Utah Power to construct or acquire additional facilities to meet the increased demand.
 
 
 24
 There have been no factual findings to substantiate this contention. The FERC did not hold a hearing because the Commission viewed the issue as one of law, i.e., the jurisdiction of the FERC. The Utah Public Service Commission was very clear in asserting jurisdiction over the rates charged by ordering Utah Power to terminate service to Sierra Pacific unless the rates are increased to cover the incremental cost of generation. As we view it, the issue is, therefore, a legal one, and does not require factual determinations as to whether the contract will, in fact, require Utah Power to build additional facilities. If that issue is to be raised it should take place in new proceedings before the FERC. The FERC has not ordered construction of additional facilities and that is not the crux of the matter before this court.
 
 
 25
 Also, if Utah Power desires to discontinue service under the contract because the terms are unfavorable to the State of Utah, since the rates charged are so low as to be damaging to the public interest, the Federal Power Act provides a procedure for such action. The Commission can modify any rate, charge or classification or any rule, regulation, practice or contract affecting such rate if the Commission finds it to be unjust, unreasonable, unduly discriminatory or preferential. The Commission has full power to undertake consideration of such issues. At this time there is no complaint filed demonstrating the unjustness of the rates being charged due to increased costs for new generating facilities.
 
 
 26
 It is argued out by the petitioners that the original contract provided that the parties be bound only if both the FERC and the Commission approved. For this it is argued that both have the approval of the Commission. It also says "This Interconnection Agreement is subject to approval of regulatory authorities having jurisdiction." However, the state does not have authority over interstate sales for the purpose of wholesaling electrical energy so submission to the Utah Commission was never contemplated.
 
 
 27
 We are unable to perceive any remedy other than that before the Federal Energy Regulatory Commission. It would seem that once a utility becomes involved in sales of interstate commodities it brings itself under the regulatory authority of the FERC, and its remedy is to obtain review and to appeal ultimately to the Supreme Court. If the order of the Federal Commission were to carry the matter to a ridiculous extreme like depriving the State of Utah of a large quantity of needed electricity, surely relief would be available.
 
 
 28
 Our decision must be that the FERC order is valid and must be approved.
 
 
 29
 It is so ordered.