STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, PUBLIC STAFF—NORTH CAROLINA UTILITIES COMMISSION, ATTORNEY GENERAL, ROY COOPER, CAROLINA UTILITY CUSTOMERS ASSOCIATION, INC., CAROLINA INDUSTRIAL GROUPS FOR FAIR UTILITY RATES I AND II, VIRGINIA ELECTRIC AND POWER COMPANY D/B/A NORTH CAROLINA POWER, NORTH CAROLINA MUNICIPAL POWER AGENCY NUMBER 1 AND NORTH CAROLINA EASTERN MUNICIPAL POWER AGENCY, INC., APPELLEES v. CAROLINA POWER & LIGHT COMPANY, DUKE POWER COMPANY, AND NORTH CAROLINA ELECTRIC MEMBERSHIP CORPORATION, APPELLANTS

No. COA02-1737

(Filed 18 November 2003)

## Utilities— wholesale electric energy contracts—written notice to Commission not required

The 10 July 2002 order of the Utilities Commission that requires public utilities to provide written notice twenty days prior to the execution of any wholesale electric energy contracts in interstate commerce are vacated and this proceeding is dismissed with prejudice, because the order was preempted by the Federal Power Act and violates the Supremacy Clause of the Constitution when Congress granted the Federal Energy Regulatory Commission exclusive jurisdiction in regulating wholesale sales of electric energy in interstate commerce.

Judge WYNN dissenting.

Appeal by appellants from orders entered 10 July 2002 and 20 August 2002 by the North Carolina Utilities Commission. Heard in the Court of Appeals 16 September 2003.

*Public Staff Executive Director Robert P. Gruber and Chief Counsel Antoinette R. Wike, by Gisele L. Rankin, Staff Attorney, for Appellee North Carolina Utilities Commission.*

*Attorney General Roy Cooper, by Assistant Attorney General Leonard G. Green, for the Attorney General.*

*West Law Offices, P.C., by James P. West, for Appellee Carolina Utility Customers Association, Inc.*

STATE EX REL. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[161 N.C. App. 199 (2003)]

*Bailey & Dixon, L.L.P., by Ralph McDonald, for Appellee Carolina Industrial Groups for Fair Utility Rates II.*

*Poyner & Spruill LLP, by Michael S. Colo, Thomas R. West, and Pamela A. Scott, for Appellees North Carolina Municipal Power Agency Number 1 and North Carolina Eastern Municipal Power Agency, Inc.*

*Hunton & Williams, by Edward S. Finley, Jr., for Appellants.*

*Len S. Anthony, for Appellant Carolina Power & Light and Progress Energy.*

*William Larry Porter and Kodwo Ghartey-Tagoe, for Appellant Duke Power Company.*

*Robert B. Schwentker and Thomas K. Austin, for Appellant North Carolina Electric Membership Corporation.*

TYSON, Judge.

Carolina Power & Light Company ("CP&L"), Duke Power ("Duke"), and North Carolina Electric Membership Corporation ("NCEMC") (collectively, "appellants") appeal from the 10 July 2002 and 20 August 2002 orders of the North Carolina Utilities Commission (the "Commission"). We vacate the 10 July 2002 orders and dismiss.

## I. Background

On 17 November 1998, CP&L applied to the Commission for permission to construct two generating plants to produce electric energy that CP&L proposed to wholesale outside its North Carolina retail service area. By order dated 11 March 2002, the Commission initiated Docket No. E-100, Sub 85A, for the purpose of receiving comments on the jurisdictional and substantive issues concerning a public utility with native load priority ("NLP") signing wholesale contracts for power to be supplied from the same plant as it provided to in-state captive retail ratepayers. NLP obligates the seller to build necessary capacity to continue to be able to serve buyers with such priority. NLP prohibits the interruption of electric energy to wholesale buyers any sooner than interruptions to the seller's captive retail ratepayers.

These issues were first presented by Public Staff to the Commission in Docket No. E-2, Sub 733. At this hearing, evidence indicated that absent the addition of the generating capacity CP&L was requesting to build, CP&L's capacity margin would fall to -1.4%

by 2003. This accelerated need for additional capacity was caused in large part by the NLP wholesale contracts CP&L had entered into with two customers. On 2 November 1999, the Commission granted CP&L's requests to build two new generating plants. As a condition to this grant, CP&L was required to ensure that its retail native load customers would not be disadvantaged.

Subsequently, Public Staff requested the Commission to initiate an investigation. By order dated 17 November 1999, the Commission initiated a generic proceeding in Docket No. E-100, Sub 85. While this docket was pending, CP&L's newly-formed holding company filed an application to engage in a business transaction with Florida Progress Corporation. The Commission approved the proposed merger and issuance of securities. The Commission imposed a number of conditions on CP&L in approving this transaction. Condition 21 required that CP&L not enter into contracts for the wholesale of electric energy and/or capacity at NLP without first giving the Commission and Public Staff written notice twenty days prior to execution of contracts. Subsequent to the issuance of the Commission's order approving the merger with Florida Progress Corporation, Public Staff, CP&L, and NCEMC jointly filed proposed new Condition 20a. This Condition provided that if CP&L gave notice as required by Condition 21 and the Commission did not affirmatively order CP&L not to enter into such contracts, the loads of these wholesale buyers would be considered CP&L's retail native load. CP&L filed a twenty-day advance notice in Docket No. E-2, Sub 798. Numerous objections to the appropriateness of this notice were raised. CP&L responded by arguing that the Commission had no authority to prohibit it from entering into wholesale electric energy contracts or to require notice to the Commission. In response, the Commission issued an order on 11 March 2002, concluding that it should initiate a new proceeding to consider this issue raised by CP&L.

On 10 July 2002, the Commission issued an order concluding that it has jurisdiction and authority under North Carolina law to supervise and control public utilities and to compel that reasonable public utility service be provided. The Commission concluded that it had jurisdiction to review, prior to execution, proposed wholesale electric energy contracts granting NLP supplied from the same plant as provided to retail ratepayers and to take appropriate action to protect reliable service to retail customers in North Carolina. The Commission further concluded that this jurisdiction and authority were not preempted by federal law. Appellants appeal.

STATE EX REL. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[161 N.C. App. 199 (2003)]

## II. ISSUES

The issues are whether: (1) the Commission's efforts to regulate wholesale electric energy contracts in interstate commerce are preempted by federal law; (2) state regulation of these wholesale contracts impermissibly burden interstate commerce; (3) the Commission is authorized under N.C. Gen. Stat. § 62 to require the submission of contracts with wholesale purchasers for review prior to execution; and (4) the Commission erred in failing to provide guidance by which it would assess the reasonableness of the agreements over which it claims jurisdiction.

## III. Federal Preemption

Appellants' first assignment of error asserts that the Commission's efforts to regulate wholesale electric energy contracts are preempted by federal law. Appellants argue that the Commission cannot regulate wholesale electric energy transactions because state jurisdiction does not attach at any point between the parties' initial contract discussions and the time the power flows. The Commission argues that N.C. Gen. Stat. § 62 grants the authority to review wholesale electric energy contracts at NLP in order to secure and protect reliable service to retail customers. The Commission further argues that this authority under N.C. Gen. Stat. § 62 is not preempted by federal law.

The threshold question in any preemption analysis is whether Congress intended federal regulation to supercede state law. *Louisiana Public Service Comm'n v. FCC*, 476 U.S. 355, 369, 90 L. Ed. 2d 369, 382 (1986). Within constitutional limits, Congress may preempt state authority by explicit terms. *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Comm'n*, 461 U.S. 190, 203, 75 L. Ed. 2d 752, 765 (1983). Absent explicit preemption, the intent of Congress to preempt may also be found from a pervasive scheme of federal regulation "to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 91 L. Ed. 1447, 1459 (1947). If Congress does not entirely displace state regulation in a specific area, state law is preempted to the extent that it: (1) actually conflicts with federal law; (2) makes compliance with both federal and state law impossible; or (3) where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pacific Gas*, 461 U.S. at 204, 75 L. Ed. 2d at

765. Our first step is to determine whether Congress intended the regulations of the Federal Energy Regulatory Commission ("FERC") (formerly known as the Federal Power Commission ("FPC")) to displace North Carolina law. This analysis requires an examination of the nature and scope of the authority granted to the FERC by Congress.

In *Public Utilities Comm'n of Rhode Island v. Attleboro Steam & Electric Co.*, the United States Supreme Court held that the sale of electric energy at wholesale was a matter of interstate commerce to be regulated by Congress. 273 U.S. 83, 86, 71 L. Ed. 549, 552 (1927). Congress had not regulated wholesale electric energy sales at that time. This decision created a gap in the law, known as the *Attleboro* gap. Congress enacted the Federal Power Act ("FPA") as Title II of the Public Utility Act in order to fill this gap. Subchapter II, section 824(a), also known as section 201(a), of the FPA provides:

> It is declared that the business of transmitting and selling electric energy for ultimate distribution to the public is affected with a public interest, and that Federal regulation of matters relating to generation to the extent provided in this subchapter and subchapter III of this chapter and of that part of such business which consists of the transmission of electric energy in interstate commerce and the *sale of such energy at wholesale in interstate commerce* is necessary in the public interest, such Federal regulation, however, to extend only to those matters which are not subject to regulation by the States.

16 U.S.C. § 824(a) (2001) (emphasis supplied).

Subchapter II, section 824(b), also known as section 201(b), further provides:

> (1) The provisions of this subchapter shall apply to the transmission of electric energy in interstate commerce and to *the sale of electric energy at wholesale in interstate commerce*, but except as provided in paragraph (2) shall not apply to any other sale of electric energy or deprive a State or State commission of its lawful authority now exercised over the exportation of hydroelectric energy which is transmitted across a State line. The Commission [FERC] shall have jurisdiction over all facilities for such transmission or sale of electric energy, but shall not have jurisdiction, except as specifically provided in this subchapter and subchapter III of this chapter, over facilities used for the generation of elec-

STATE ex rel. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[161 N.C. App. 199 (2003)]

tric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter.

16 U.S.C. § 824(b) (2001) (emphasis supplied). These sections show the clear intent of Congress in enacting the FPA to vest the FERC with exclusive power to regulate wholesale electric energy sales in interstate commerce.

In *United States v. Public Utilities Comm'n of California*, the Supreme Court held that "Congress interpreted [*Attleboro*] as prohibiting state control of wholesale rates in interstate commerce for resale, and so armed the Federal Power Commission with precisely that power." 345 U.S. 295, 308, 97 L. Ed. 1020, 1033 (1953). The Court stated that subchapter II of the FPA, and *Attleboro*, should be "read together" and that "the latter left no power in the states to regulate licensees' sales for resale in interstate commerce, while the former established federal jurisdiction over such sales." *Id.* at 311, 97 L. Ed. at 1035.

In *Federal Power Comm'n v. Southern California Edison Co.*, the United States Supreme Court held that "[section] 201(b) [of the FPA] grants the FPC jurisdiction of all sales of electric energy at wholesale in interstate commerce not expressly exempted by the Act itself . . . ." 376 U.S. 205, 210, 11 L. Ed. 2d 638, 643 (1964). The United States Supreme Court reasoned:

[O]ur decisions have squarely rejected the view of the Court of Appeals that the scope of FPC jurisdiction over interstate sales of gas or electricity at wholesale is to be determined by a case-by-case analysis of the impact of state regulation upon the national interest. Rather, Congress meant to draw a bright line easily ascertained, between state and federal jurisdiction, making unnecessary such case-by-case analysis. This was done in the Power Act by making FPC jurisdiction plenary and extending it to all wholesale sales in interstate commerce except those which Congress has made explicitly subject to regulation by the States.

*Id.* at 215-216, 11 L. Ed. 2d at 646. "[T]he legislative history of Part II of the Power Act demonstrates that Congress believed that *Attleboro* and the related cases compelled it to forego its assumption as to state regulation and displace it with comprehensive federal regulation." *Id.* at 220, 11 L. Ed. 2d at 649.

STATE ex rel. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[161 N.C. App. 199 (2003)]

In *Appalachian Power Co. v. Public Service Comm'n of West Virginia*, a case factually similar to at bar, the United States Court of Appeals for the Fourth Circuit addressed whether Congress, after granting FERC authority to regulate the transmission and wholesale contracts of electric energy in interstate commerce, "left open to the states the power to consider the prudence of agreements regarding interstate energy exchanges." 812 F.2d 898, 902 (4th Cir. 1987). The utility companies submitted their proposed agreement to FERC for approval. *Id.* at 901. The FERC accepted the agreement for filing as a rate schedule but before FERC could make a decision as to whether the terms of the agreement were just and reasonable, the Public Service Commission of West Virginia intervened in the FERC proceedings. *Id.* The Public Service Commission subsequently decided to defer to FERC on the prudence inquiry of the agreement as it believed its authority was preempted. *Id.* However, in a reconsideration of its deferment, the Commission ruled that it retained authority to require utilities to submit agreements for their approval and that their jurisdiction was not preempted. *Id.* The court overruled the state commission and held that Congress did not intend to allow the states to retain this power and that the West Virginia Public Service Commission's assertion of authority was preempted by the FPA. *Id.* at 899.

The court held that Congress gave the FERC exclusive jurisdiction to consider the merits of wholesale interstate agreements. *Id.* The FERC's jurisdiction to consider the merits of these contracts "follows from its general power over the 'transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce.' " *Id.* at 902 (quoting 16 U.S.C. § 824(a)). The court explained, "FERC's role is to determine whether such rates and charges are just and reasonable and not unduly preferential, discriminatory, or disadvantageous to any party." *Id.; see* 16 U.S.C. § 824(d), 824(e). The court stated that in order to decide whether to approve wholesale electric energy contracts, the Public Service Commission of West Virginia would have to consider "whether the contract's terms are reasonable, whether the contract gives any party an undue advantage, and whether the contract is in the public interest of the state." *Id.* at 903. The court ruled that this prudence inquiry by the state commission was "not different from the FERC inquiry into the justness and reasonableness of the [agreement]" and that the state commission's inquiry would "duplicate the FERC's inquiry" and was thus "impermissible because the issue of the [agreement's] merits falls within the FERC's exclusive jurisdiction . . . ." *Id.* at 903-04.

206 IN THE COURT OF APPEALS

STATE ex rel. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[161 N.C. App. 199 (2003)]

The court reasoned that "allowing the states to make the kind of prudence inquiry urged in this case not only would pose the potential for direct conflict with FERC pronouncements but also would impede accomplishment of the purposes of the FPA," precisely what the federal preemption was designed to prevent. *Id.* at 904. "Lodging exclusive authority in FERC to consider the merits of the [agreement] thus forecloses the potential for differing state pronouncements regarding an agreement involving utilities regulated by various states." *Id.* at 905.

In *State of Utah v. FERC,* the issue was whether the FERC had exclusive jurisdiction under the FPA regarding wholesale power contracts between two power companies to the exclusion of the Utah Commission. 691 F.2d 444, 446 (10th Cir. 1982). The power companies submitted their proposed contract to FERC first, before submitting the contract to the Utah Public Service Commission even though the Commission had previously issued an order requiring Utah Power to submit for its approval all contracts for the sale of power to any customer or other utility if the applicant intended to use any facility over which the Utah Commission had jurisdiction. *Id.* The United States Court of Appeals for the Tenth Circuit held that the Utah Public Service Commission's authority was preempted and ruled, "where there is a sale at wholesale of electric energy in interstate commerce the jurisdiction of the FERC is exclusive." *Id.* at 446. The court stated that "Congress interpreted this ruling as prohibiting state control of wholesale rates for electrical energy in interstate commerce, and so it gave the Federal Power Commission the authority under Part II of the Federal Power Act." *Id.* at 447. The court reasoned that "it appears that the purpose of the 1935 amendments [to the FPA] was to vest the federal agency with power to regulate sales of electricity such as that presented here." *Id.* "The authority of the Federal Power Commission was intended to be plenary and extend to all sales in interstate commerce . . . ." *Id.*

The Court also explained that the FPA provided remedies for the FERC and state utility commissions if the rates charged under the wholesale contract damaged the public interest. *Id.* at 448. These remedies are found in Subchapter II, section 824e(a) of the FPA:

(a) Unjust or preferential rates, etc.; statement of reasons for changes; hearing; specification of issues.

Whenever the Commission, after a hearing had upon its own motion or upon complaint, shall find that any rate, charge, or

classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of the Commission, or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, the Commission shall determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order. Any complaint or motion of the Commission to initiate a proceeding under this section shall state the change or changes to be made in the rate, charge, classification, rule, regulation, practice, or contract then in force, and the reasons for any proposed change or changes therein. If, after review of any motion or complaint and answer, the Commission shall decide to hold a hearing, it shall fix by order the time and place of such hearing and shall specify the issues to be adjudicated.

16 U.S.C. § 824e(a) (2001). The court added that "the [FERC] can modify any rate, charge or classification or any rule, regulation, practice or contract affecting such rate if the [FERC] finds it to be unjust, unreasonable, unduly discriminatory or preferential." *Utah*, 691 F.2d at 448-449. The court further explained that "if the order of the Federal Commission were to carry the matter to a ridiculous extreme like depriving the State of Utah of a large quantity of needed electricity, surely relief would be available." *Id.*

N.C. Gen. Stat. § 62-42 (2001) gives our State Utilities Commission further remedies should appellants' service to captive retail ratepayers become inadequate or unreliable. N.C. Gen. Stat. § 62-42 (2001) states:

(a) Except as otherwise limited in this Chapter, whenever the Commission, after notice and hearing had upon its own motion or upon complaint, finds: (1) That the service of any public utility is inadequate, insufficient or unreasonably discriminatory, or (2) That persons are not served who may reasonably be served, or (3) That additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, facilities or other physical property of any public utility, of any two or more public utilities ought reasonably to be made, or (4) That it is reasonable and proper that new structures should be erected to promote the security or convenience or safety of its patrons, employees and the public, or (5) That any other act is necessary to

208     IN THE COURT OF APPEALS

STATE ex rel. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[161 N.C. App. 199 (2003)]

secure reasonably adequate service or facilities and reasonably and adequately to serve the public convenience and necessity, the Commission shall enter and serve an order directing that such additions, extensions, repairs, improvements, or additional services or changes shall be made or affected within a reasonable time prescribed in the order.

The Commission argues that state prereview is needed to prevent public utilities from entering into wholesale electric energy contracts on the free market which may fail or become unprofitable, in order to protect local captive retail ratepayers from paying for the effects of failed wholesale electric energy contracts in interstate commerce. Should appellants' services to captive North Carolina ratepayers become "inadequate, insufficient, or unreasonably discriminatory," the Commission can require public utilities to build new structures to provide service that is reasonable and adequate. *Id.* Public utilities must be prepared to analyze and absorb the risks of entering into wholesale contracts in the competitive and free market and avoid looking to local captive retail ratepayers for subsidy. The path to greener grass beyond North Carolina's borders does not lead to a prodigal return home, with hat in hand.

CP&L agreed to give the Commission written notice twenty days prior to the execution of any wholesale electric energy contracts. The Commission's reason to require this prior notice was to ensure that captive retail ratepayers will continue to receive adequate and reliable electric service if this wholesale contract was executed. Under the holdings of *Appalachian Power and Utah*, this prereview of the prudence of agreements is clearly preempted by the provisions of the FPA which state that "FERC's role is to determine whether such rates and charges are just and reasonable and not unduly preferential, discriminatory, or disadvantageous to any party." *Appalachian Power*, 812 F.2d at 902; *See* 16 U.S.C. § 824(d), 824(e). Allowing the Commission to inquire into the "prudence" of these wholesale electric energy contracts, as state commissions in *Utah* and *Appalachian Power* attempted to do, "not only would pose the potential for direct conflict with FERC pronouncements but also would impede accomplishment of the purposes of the FPA," precisely what federal preemption was designed to prevent. *Id.* at 904. The FERC has the exclusive jurisdiction to make inquiry into and to determine the reasonableness of wholesale electric energy contracts in interstate commerce. *Id.* at 900. Congress has not "left open to the states the power to consider the prudence of agreements regard-

ing interstate energy exchanges." *Id.* at 902. The FERC's jurisdiction over wholesale sales of electric energy in interstate commerce is exclusive and attaches at the point the parties to a wholesale contract begin negotiating.

We hold that the Commission's order, which requires public utilities to provide written notice twenty days prior to the execution of any wholesale electric energy contracts in interstate commerce directly conflicts with the FERC's powers and is preempted by the FPA. In light of this holding, we need not reach the appellants' other assignments of error.

### IV. Conclusion

Under the FPA, Congress granted FERC exclusive jurisdiction in regulating wholesale sales of electric energy in interstate commerce. The 10 July 2002 orders of the Commission are preempted by the FPA and violate the Supremacy Clause of the Constitution of the United States. U.S. Const. art. VI.; *See also Federal Power Comm'n v. Southern California Edison Co.*, 376 U.S. 205, 11 L. Ed. 2d 638 (1964). The 10 July 2002 orders of the Commission are vacated and this proceeding is dismissed with prejudice.

Vacated and dismissed.

Judge LEVINSON concurs.

Judge WYNN dissents in a separate opinion.

WYNN, Judge dissenting.

FERC regulations under Section 201(a) of the FPA, 16 U.S.C. § 824(a), "extend only to those matters which are not subject to the regulation by the States." By its terms, the FPA does not govern intrastate generation, production and transmission to retail customers. Thus, the NCUC, in this case, concluded "it has jurisdiction and authority under State law [N.C. Gen. Stat. §§ 62-30 and 62-32] to review, before they are signed, proposed wholesale contracts by a regulated North Carolina public utility granting native load priority to be supplied from the same plant as retail ratepayers and to take appropriate action if necessary to secure and protect reliable service to retail customers in North Carolina." After reviewing the Commission's conclusion, the majority held that because "under the FPA, Congress granted FERC exclusive jurisdiction in

STATE ex rel. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[161 N.C. App. 199 (2003)]

regulating wholesale sales of electric energy in interstate commerce" the "order of the Commission is pre-empted by the FPA and violates the Supremacy Clause of the Constitution of the United States." While I agree that federal law grants FERC exclusive jurisdiction to regulate wholesale sales of electric energy in interstate commerce, I disagree that federal law preempts the State of North Carolina from having any oversight over *proposed contracts* to engage in the sale of energy generated in North Carolina to another state. I respectfully dissent.

In reaching its holding, the majority relies upon federal cases in which the courts addressed attempts by a state public utility commission to exercise authority over activities involving existing contracts for the wholesale sales of electric energy in interstate commerce. However, none of the cases cited by the majority address the pre-review of *proposed* wholesale agreements by a state utility commission. Indeed, in *Appalachian Power Co. v. PSC of West Virginia*, 812 F.2d 898 (4th Cir. 1987), a case heavily relied upon by the majority, the Public Service Commission of West Virginia sought to undertake a prudence inquiry into interstate energy exchanges after FERC approval. In concluding West Virginia's jurisdiction was preempted, the Fourth Circuit determined the state commission's inquiry would duplicate the FERC's inquiry and would pose the potential for direct conflict with FERC pronouncements and would impede accomplishment of the purposes of the FPA. *See* 812 F.2d at 903-05.

Unlike *PSC of West Virginia*, the NCUC attempts to review *proposed* contracts for the interstate sale of wholesale electricity prior to the execution of the contracts in order to protect the interests of North Carolina electricity retail customers, which is not preempted by federal law. Section 201(a) of the FPA, 16 U.S.C. § 824(a), states federal regulation only extends to those matters not subject to state regulation, which includes the interstate wholesale sale of electricity. However, in this case, the NCUC is attempting to assert jurisdiction over non-executed contracts which contemplate the wholesale sale of electricity from plants that would serve interstate wholesale and intrastate retail customers. Ensuring the reliability of service to intrastate retail customers is within the province of state regulation. *See* N.C. Gen. Stat. § 62-2(a)(3). Whereas, *PSC of West Virginia* precludes state review of contracts after FERC approval, the pre-execution review of such contracts has not been prohibited or preempted.

**NORMAN v. N.C. DEP'T OF TRANSP.**

[161 N.C. App. 211 (2003)]

Although the majority has rendered a correct recitation of the law governing preemption[1], it should also be noted that "a test of whether both federal and state regulations may operate, or the state regulation must give way, is whether both regulations can be enforced without impairing the federal superintendence of the field, not whether they are aimed at similar or different objectives." *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 1217, 10 L. Ed.2 d 248, 256-57 (1963). Thus, neither statute nor case law prohibits the NCUC from reviewing contracts prior to its execution to ensure the terms of those contracts provide for adequate, reliable and economic utility service to the citizens and residents of this State. Upon execution of the contract, the FERC can approve or disapprove the agreement or embark upon its own prudence inquiry. Such a procedure neither creates an actual conflict between state and federal law, makes compliance with federal and state law impossible, nor poses an obstacle to the accomplishment of the purposes and objectives of the FPA.

---

1. As the majority correctly states:

The threshold question in any preemption analysis is whether Congress intended federal regulation to supercede State law. Within constitutional limits, Congress may preempt state authority by explicit terms. Absent explicit preemption, Congress' intent to preempt may also be found from a pervasive scheme of federal regulation to make reasonable the inference that Congress left no room for the States to supplement it. If Congress does not entirely displace state regulation in a specific area, state law is preempted to the extent that it (1) actually conflicts with federal law; (2) makes compliance with both federal and state law impossible; or, (3) where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

(citations omitted).