STATE EX REL. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[174 N.C. App. 681 (2005)]

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, PUBLIC STAFF—
NORTH CAROLINA UTILITIES COMMISSION, ATTORNEY GENERAL, ROY
COOPER, CAROLINA UTILITY CUSTOMERS ASSOCIATION, INC., CAROLINA
INDUSTRIAL GROUPS FOR FAIR UTILITY RATES I AND II, VIRGINIA ELECTRIC
AND POWER COMPANY D/B/A NORTH CAROLINA POWER, NORTH CAROLINA
MUNICIPAL POWER AGENCY NUMBER 1 AND NORTH CAROLINA EASTERN
MUNICIPAL POWER AGENCY, INC., APPELLEES v. CAROLINA POWER & LIGHT
COMPANY, DUKE POWER COMPANY, AND NORTH CAROLINA ELECTRIC MEM-
BERSHIP CORPORATION, APPELLANTS

No. COA02-1737-2

(Filed 6 December 2005)

## 1. Utilities— wholesale interstate power contracts—regulation—not discriminatory

A regulation requiring notice to the Utilities Commission of wholesale interstate energy contracts was merely burdensome on interstate commerce, and not discriminatory, because it applied equally to wholesale contracts in and out of state. The regulation should therefore be evaluated for whether its effect on interstate commerce is clearly excessive in relationship to putative local benefits.

## 2. Utilities— wholesale interstate power contracts—regulation not overly burdensome

A utilities regulation requiring notice to the Utilities Commission of interstate contracts for wholesaling electric energy is not overly burdensome to interstate commerce because the local benefit (ensuring the supply of electricity to retail customers) outweighs the interstate burden.

## 3. Utilities— wholesale interstate power contracts—authority of Commission to regulate

The Utilities Commission has the authority under N.C.G.S. § 62-30 and N.C.G.S. § 62-32(b) to require advance submission of wholesale interstate power contracts. The statutes give the Utilities Commission "all powers" necessary to regulate public utilities to ensure that the citizens of North Carolina are provided reasonable service.

STATE EX REL. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[174 N.C. App. 681 (2005)]

### 4. Utilities— wholesale power contracts—Commission order— sufficient for determination of issues

A Utilities Commission order concerning wholesale interstate power contracts was sufficient to allow the Court of Appeals to determine the controverted issues.

Judge TYSON dissenting.

Appeal by Appellants from orders entered 10 July 2002 and 20 August 2002 by the North Carolina Utilities Commission. Heard in the Court of Appeals 16 September 2003. A divided panel of this Court vacated and dismissed with prejudice the orders of the Commission under the Supremacy Clause of the United States Constitution, U.S. CONST. art. VI, cl. 2, by opinion filed 18 November 2003. *See State ex rel. Utils. Comm'n v. Carolina Power & Light Co.*, 161 N.C. App. 199, 588 S.E.2d 77 (2003) (Wynn, J. dissenting). The North Carolina Supreme Court reversed this Court and, by opinion filed 1 July 2005, remanded to this Court for "consideration of the remaining" assignments of error. *See State ex rel. Utils. Comm'n v. Carolina Power & Light Co.*, 359 N.C. 516, 614 S.E.2d 281 (2005).

*Public Staff Executive Director Robert P. Gruber and Chief Counsel Antoinette R. Wike, by Gisele L. Rankin, Staff Attorney, for appellee North Carolina Utilities Commission.*

*Attorney General Roy Cooper, by Assistant Attorney General Leonard G. Green, for the Attorney General.*

*West Law Offices, P.C., by James P. West, for appellee Carolina Utility Customers Association, Inc.*

*Bailey & Dixon, L.L.P., by Ralph McDonald, for appellee Carolina Industrial Groups for Fair Utility Rates II.*

*Poyner & Spruill LLP, by Michael S. Colo, Thomas R. West, and Pamela A. Scott, for appellees North Carolina Municipal Power Agency Number 1 and North Carolina Eastern Municipal Power Agency, Inc.*

*Hunton & Williams, by Edward S. Finley, Jr., for appellants.*

*Len S. Anthony, for appellants Carolina Power & Light and Progress Energy.*

STATE ex rel. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[174 N.C. App. 681 (2005)]

*William Larry Porter and Kodwo Ghartey-Tagoe, for appellant Duke Power Company.*

*Robert B. Schwentker and Thomas K. Austin, for appellant North Carolina Electric Membership Corporation.*

WYNN, Judge.

Non-discriminatory state regulations that "effectuate a legitimate local public interest" and incidentally burden interstate commerce "will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 25 L. Ed. 2d 174, 178 (1970). Appellants argue that the North Carolina Utilities Commission's regulation at issue violates the Commerce Clause and is burdensome on interstate commerce. As we find that the local benefit outweighs the incidental burden to interstate commerce, we affirm the Utility Commission's orders.

This case is on remand to this Court "for consideration of the remaining issues" as mandated by our Supreme Court's holding in *State ex rel. Utils. Comm'n v. Carolina Power & Light Co.*, 359 N.C. 516, 529, 614 S.E.2d 281, 290 (2005) wherein the facts pertaining to the issues in this case are fully set forth. *See also State ex rel. Utils. Comm'n v. Carolina Power & Light Co.*, 161 N.C. App. 199, 588 S.E.2d 77 (2003).

The issues we address on remand are: (1) whether state regulation of wholesale interstate power contracts impermissibly burdens interstate commerce; (2) whether the Utility Commission is authorized under chapter 62 of the North Carolina General Statutes to require the submission of contracts with wholesale interstate purchasers for review prior to execution; and (3) whether the Utility Commission erred in failing to provide guidance by which it would assess the reasonableness of the agreements over which it claims jurisdiction.

[1] Appellants first argue that the Utility Commission's regulation of wholesale contracts, Regulatory Condition 21, impermissibly burdens interstate commerce. Regulatory Condition 21 requires that a utility shall not enter into contracts for the wholesale of electric energy and/or capacity at native load capacity without first giving the Utility Commission and Public Staff written notice twenty days prior to execution of the contracts.

STATE EX REL. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[174 N.C. App. 681 (2005)]

In reversing the earlier opinion in this case, our Supreme Court stated that the Utility Commission's purpose, "was to provide a mechanism through which [the Utility Commission] meaningfully could enforce the requirement 'that CP&L's retail native load customers receive priority with respect to, and the benefits from, CP&L's existing generation and that CP&L's wholesale activities not disadvantage its retail ratepayers from either a quality of service or rate perspective[,]' " and it could " 'take appropriate action . . . to secure and protect reliable service to retail customers in North Carolina.' " *Carolina Power & Light Co.*, 359 N.C. at 519-21, 614 S.E.2d at 284. As our Supreme Court has deemed that the record on appeals shows the purpose of the regulation, that purpose is binding on this Court.

Appellants contend that the Utility Commission's regulation of wholesale contracts impermissibly burdens interstate commerce in violation of the Commerce Clause of the United States Constitution. However, the Utility Commission's regulation ensures that North Carolina retail consumers get a reliable source of electricity, and is merely burdensome on interstate commerce and not discriminatory.[1] Accordingly, the regulation should be analyzed under the test set out by the United States Supreme Court in *Pike*, 397 U.S. at 142, 25 L. Ed. 2d at 178. The *Pike* test states that "[w]here the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.*

[2] Applying the *Pike* test to the case at hand, the requirement that the companies allow the Commission and Public Staff to review proposed contracts twenty days before they are signed, is not overly burdensome on interstate commerce as the "putative local benefit," to ensure supply of electricity to retail customers, outweighs the burden on interstate commerce. *See Ark. Elec. Coop. Corp. v. Ark. Public Serv. Comm'n*, 461 U.S. 375, 394, 76 L. Ed. 2d 1, 17 (1983) (state regulation of the wholesale rates charged by utility to its members is well within the scope of "legitimate local public interests" and does not impermissibly burden interstate commerce).

---

1. Appellants cite to *City of Philadelphia v. New Jersey*, 437 U.S. 617, 57 L. Ed. 2d 475 (1978), to support its argument that the regulation impermissibly burdens interstate commerce. But *City of Philadelphia* involved a New Jersey statute that was facially discriminatory. *Id.* at 628, 57 L. Ed. 2d at 484. In this case, the regulation is not discriminatory, merely burdensome, because the regulation applies equally to wholesale contracts in and out of state. As this regulation is not discriminatory, *City of Philadelphia* is inapplicable.

As the Utility Commission's regulation does not violate the Commerce Clause, we affirm the Utility Commission's orders.

[3] Appellant also argues that Chapter 62 of the North Carolina General Statutes does not authorize the Utility Commission to require submission of contracts with wholesale purchasers prior to execution.

Pursuant to section 62-30 of the North Carolina General Statutes:

The Commission shall have and exercise such general power and authority to supervise and control the public utilities of the State as may be necessary to carry out the laws providing for their regulation, and all such other powers and duties as may be necessary or incident to the proper discharge of its duties.

N.C. Gen. Stat. § 62-30 (2003). The Utility Commission is also "vested with *all power necessary* to require and compel any public utility to provide and furnish to the citizens of this State reasonable service of the kind it undertakes[.]" N.C. Gen. Stat. § 62-32(b) (2003) (emphasis added).

Our Supreme Court stated that the Utility Commission's purpose of this regulation, "was to provide a mechanism through which NCUC meaningfully could enforce the requirement 'that CP&L's retail native load customers receive priority with respect to, and the benefits from, CP&L's existing generation and that CP&L's wholesale activities not disadvantage its retail ratepayers from either a quality of service or rate perspective[,]' " and it could " 'take appropriate action . . . to secure and protect reliable service to retail customers in North Carolina.' " *Carolina Power & Light Co.*, 359 N.C. at 519-21, 614 S.E.2d at 284. As sections 62-30 and 62-32(b) of the North Carolina General Statutes give the Utility Commission "all powers necessary" to regulate public utilities to ensure the citizens of this State are provided with reasonable service, the instant regulation is authorized by sections 62-30 and 62-32(b) because the regulation's purpose is to ensure the supply of electricity to retail customers. Accordingly, we affirm the Utility Commission's orders as it has the statutory authority to require advance submission of wholesale contracts.

[4] Finally, Appellants argue that the Utility Commission erred by failing to provide guidance by which it would assess the reasonableness of the agreements. In its order denying reconsideration of its 10 July order, the Utility Commission stated that the "Order was only intended to address the matter of jurisdiction since that is a threshold

issue. It is not appropriate for this Order to try to specify exactly how the Commission will exercise its jurisdiction or what the Commission might do in a particular case." We hold that the Utility Commission was simply reserving this issue for later determination after the threshold issue of jurisdiction had been decided.

Appellants cite to section 62-79(a)(2) of the North Carolina General Statutes to support their argument that the Commission needed to give further guidance. Section 62-79(a)(2) provides:

> (a) All final orders and decisions of the Commission shall be sufficient in detail *to enable the court on appeal to determine the controverted questions presented* in the proceedings and shall include:
>
> ***
>
> (2) The appropriate rule, order, sanction, relief or statement of denial thereof.

N.C. Gen. Stat. § 62-79(a) (2003) (emphasis added). The Commission's order is sufficient to allow this Court to determine the issues of jurisdiction, i.e. violation of the commerce clause, supremacy of federal law, and statutory authorization, as previously stated. Accordingly, we affirm the Commission's orders.

Affirmed.

Judge LEVINSON concurs.

Judge TYSON dissents.

TYSON, Judge, dissenting.

The majority's opinion addresses the issues of whether the regulation violates the Commerce Clause of the United States Constitution and Chapter 62 of the North Carolina General Statutes and affirms the Commission's order without determining the effect of the regulation on interstate commerce. The record before us is insufficient to make that determination. This case should be remanded to the Commission. I respectfully dissent.

## I.  The Commerce Clause

Appellants contend the scope of the Commission's jurisdiction over wholesale power contracts is an impermissible burden on inter-

state commerce in violation of the Commerce Clause of the United States Constitution.

Article I, Section 8, Clause 3 of the United States Constitution confers on Congress the power to "regulate Commerce . . . among the several States[.]" The Commerce Clause "has long been seen as a limitation on state regulatory powers, as well as an affirmative grant of congressional authority." *Fulton Corp. v. Faulkner*, 516 U.S. 325, 331, 133 L. Ed. 2d 796, 804 (1996) (citation omitted). The United States Supreme Court has "identified two modes of analysis to evaluate state statutes under the Commerce Clause. The Court will consider the statute invalid without further inquiry when it 'directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests.' " *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 762-63, 131 L. Ed. 2d 820, 832-33 (1995) (quoting *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579, 90 L. Ed. 2d 552, 559 (1986)). Where a state statute regulates evenhandedly and only indirectly effects interstate commerce, "it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church*, 397 U.S. 137, 142, 25 L. Ed. 2d 174, 178 (1970) (citation omitted). In either case, "the critical consideration is *the overall effect* of the statute on both local and interstate activity." *Brown-Forman Distillers Corp. v. New York State Liquor Auth.*, 476 U.S. 573, 579, 90 L. Ed. 2d 552, 560 (1986) (emphasis supplied).

> It is established beyond peradventure that "legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality . . . ." A court may invalidate legislation enacted under the Commerce Clause only if it is clear that there is no rational basis for a congressional finding that the regulated activity affects interstate commerce, or that there is no reasonable connection between the regulatory means selected and the asserted ends.

*Hodel v. Indiana*, 452 U.S. 314, 323-24, 69 L. Ed. 2d 40, 50 (1981) (internal citations and quotations omitted).

The production and sale of electric energy is an article of trade within the bounds of Commerce Clause protection. *See New England Power Co. v. New Hampshire*, 455 U.S. 331, 71 L. Ed. 2d 188 (1982) (applying a Commerce Clause analysis to a regulation restricting the transportation of privately produced electricity in interstate

commerce). "A State is without power to prevent privately owned articles of trade from being shipped and sold in interstate commerce on the ground that they are required to satisfy local demands or because they are needed by the people of the State." *Foster-Fountain Packing Co. v. Haydel*, 278 U.S. 1, 10-11, 73 L. Ed. 147, 153 (1928) (citations omitted).

Regulatory Condition 21 requires that an utility *shall not enter* into a contract for the wholesale purchase of electric energy at native load capacity without first giving the Commission and the Public Staff written notice twenty days prior to execution of the contract. The Commission's justification for the prior submission requirement was to "provide a mechanism through which NCUC meaningfully could enforce the requirement 'that CP&L's retail native load customers receive priority with respect to, and the benefits from, CP&L's existing generation and that CP&L's wholesale activities not disadvantage its retail ratepayers from either a quality of service or rate perspective.' " *State ex rel. Utils. Comm'n v. Carolina Power & Light Co.*, 359 N.C. 516, 519, 614 S.E.2d 281, 284 (2005). The Commission concluded it has the authority "to take appropriate action if necessary to secure and protect reliable service to retail customers in North Carolina." The Commission failed to provide any guidelines by which it would assess the reasonableness of the agreements over which it has claimed jurisdiction. The Commission has not yet defined what constitutes "appropriate action," or to set forth the factors it will use to determine whether the proposed "action" is "appropriate," or what remedial measures the Commission may assert.

Without the Commission setting forth any guidelines it will follow in reviewing a wholesale contract, this Court is unable to determine the local and overall effects or benefits arising from the regulation to conduct a meaningful analysis under the Commerce Clause. *Brown-Forman Distillers Corp.*, 476 U.S. at 579, 90 L. Ed. 2d at 560 (the court must consider the overall effect of the statute on local and interstate activity). This Court cannot determine whether the burden on interstate commerce arising from the regulation "is clearly excessive" in relation to the local benefits it affords. *Pike*, 397 U.S. at 142, 25 L. Ed. 2d at 178.

The Commission has not issued any guidance to provide notice to or assist the parties in negotiating terms or provisions of contracts in advance of its required twenty-day prior submission of proposals. In *State ex rel. Util. Comm'n v. Carolina Water Service, Inc.*, our Supreme Court stated:

STATE ex rel. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[174 N.C. App. 681 (2005)]

This Court has stressed in the past how important it is that the Commission "enter final orders that are sufficient in detail to enable this Court on appeal to determine the controverted issues . . . *Failure to include all necessary findings of fact and details is an error of law and a basis for remand* under N.C.G.S. § 62-94(b)(4) *because it frustrates appellate review.*"

335 N.C. 493, 501-02, 439 S.E.2d 127, 132 (1994) (emphasis supplied) (quoting *State ex rel. Utilities Comm. v. AT&T Communications,* 321 N.C. 586, 588, 364 S.E.2d 386, 387 (1988)). I vote to remand this issue to the Commission for findings of fact and to develop a record setting forth the factors and guidelines the Commission will employ once it receives a proposed wholesale power contract and any constitutionally permissible "appropriate action" it may take.

## II. Chapter 62

Appellants next contend that Chapter 62 of the North Carolina General Statutes does not authorize the Commission to require the submission of contracts with wholesale purchasers for regulation prior to execution. Our Supreme Court held that the Commission's jurisdiction is not preempted by the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.; *State ex rel. Utils. Comm'n v. Carolina Power & Light Co.*, 359 N.C. at 529, 614 S.E.2d at 290.

The General Assembly has delegated to the Commission the "authority to supervise and control the public utilities of the State as may be necessary to carry out the laws providing for their regulation . . . ." N.C. Gen. Stat. § 62-30 (2003). The Commission is also "vested with all power necessary to require and compel any public utility to provide and furnish to the citizens of this State reasonable service of the kind it undertakes to furnish and fix and regulate the reasonable rates and charges to be made for such service." N.C. Gen. Stat. § 62-32(b) (2003).

The reason for strict regulation of public utilities is that they are either monopolies by nature or given the security of monopolistic authority for better service to the public. The public is best served in many circumstances where destructive competition has been removed and the utility is a regulated monopoly.

*Utilities Comm. v. Coach* and *Utilities Comm. v. Greyhound Corp.*, 260 N.C. 43, 51, 132 S.E.2d 249, 254 (1963). Retail customers totally depend upon their franchised electric utility for reliable electric serv-

690 IN THE COURT OF APPEALS

STATE ex rel. UTILS. COMM'N v. CAROLINA POWER & LIGHT CO.

[174 N.C. App. 681 (2005)]

ice. As such, the Commission has the duty to set reasonable rates and the authority to compel utility companies to render adequate and reliable service. *Utilities Comm. v. Edmisten*, 294 N.C. 598, 605, 242 S.E.2d 862, 867 (1978) (citation omitted). The Commission has asserted:

> it has jurisdiction and authority under State law to review, before they are signed, proposed wholesale contracts by a regulated North Carolina public utility granting native load priority to be supplied from the same plant as retail ratepayers and to take appropriate action if necessary to secure and protect reliable service to retail customers in North Carolina.

The Commission presented no indication of or guidance to the parties through rule making or regulation how it intends to apply its asserted statutory authority to review a proposed interstate wholesale contract prior to its execution by the parties. The Commission has not set forth the options or powers it asserts to have upon reviewing these contracts or remedies it may assert, other than the power to "take appropriate action."

Because the Commission failed to provide the parties any procedure or guidelines to show what the Commission will or will not do in light of a proposed contract, this Court is unable on this record to determine whether the regulation at issue is within the Commission's statutory authority under Chapter 62.

In its order initiating the investigation and requesting comments, the Commission noted the "sharp disagreement among the parties" regarding the extent of the Commission's jurisdiction. The Commission requested the parties file briefs arguing their positions on the extent of the Commission's jurisdiction over regulated utilities signing wholesale interstate contracts at native load priority. The Commission also requested the parties submit a list of issues appropriate for further comment for review by the Commission.

As stated in the brief submitted by the North Carolina Attorney General, "the Commission has not failed to give the utilities specifics about how it intends to review and assess a grant of native load priority and its possible effects on retail customers. It simply has not gotten to that stage in this proceeding." Because the Commission has not "gotten to that stage in this proceeding," this Court is unable to review any guidelines or procedures the Commission may employ in reviewing a wholesale contract to determine the effect the

Commission's actions may have on interstate commerce, or whether the regulation as applied on any "appropriate action" taken is an impermissible burden on interstate commerce.

Without guidance the utilities may rely upon in negotiating with potential interstate purchasers, public electric utilities doing business in North Carolina are left at a competitive disadvantage to electric utilities of other states. Without knowing the guidelines and procedures the Commission will employ in reviewing potential wholesale energy contracts, we are unable on this record to decide either the effects or burdens on interstate commerce or whether the Commission's prior review requirement or asserted "appropriate action" rests within its statutory powers.

I vote to remand this issue to the Commission for findings of fact and to develop a record setting forth the guidelines and procedures the Commission intends to employ upon the receipt and review of potential wholesale energy contracts and the nature and extent of the constitutionally permissible "appropriate action" it may take.

### III. Conclusion

Without any guidelines or procedures the Commission intends to employ in reviewing a contract or the "appropriate action" it may take, this Court is unable to address the effect of the Commission's action on interstate commerce or to determine whether the Commission has acted within its statutory powers.

While the "purpose" of the prior review regulation may be laudable, our analysis must be on the "effect" on interstate commerce of the Commission's actions and whether the Commission's actions are permitted under its statutory powers. I agree with the State Attorney General's argument that the jurisdictional and preemption issues have been settled. This case should be remanded to the Commission for findings of fact and for developing a record consistent with the constitutional limits of the Commerce Clause, United States Constitution, Article I, Section 8, Clause 3, and its statutory powers under North Carolina General Statutes, Chapter 62. The attempt by the majority's opinion to adjudicate and affirm these issues in the absence of an adequate record and absence of the required Commerce Clause effects analysis is error. I respectfully dissent.